**STATE of Tennessee, Plaintiff-Appellee,**

v.

**Walter Keith JOHNSON,
Defendant-Appellant.**

Supreme Court of Tennessee.

Aug. 22, 1983.

Rehearing Denied Dec. 12, 1983.

Ray H. Ledford, Chattanooga, for defendant-appellant.

Robert L. Jolley, Jr., Asst. Atty. Gen., Nashville, for plaintiff-appellee; William M. Leech, Jr., Atty. Gen., Nashville, of counsel.

## OPINION

BROCK, Justice.

The defendant, Walter Keith Johnson, 37 years of age, was convicted in the trial court of armed robbery and first degree murder of Raymond Harris. The defendant's punishment was fixed at death by electrocution for the murder and 35 years' imprisonment for the robbery.

The defendant appeals and asserts that the convictions and sentences are invalid upon several grounds: (1) that the evidence is insufficient to support the jury's verdicts of murder in the first degree and armed robbery; (2) that sheriff's deputies violated his constitutional rights in making his arrest, searching his pickup truck and seizing certain guns concealed therein and, for these reasons, that evidence of his possession of such guns was not properly admitted; (3) that an inculpatory statement given by him to sheriff's deputies was improperly obtained and should not have been admitted in evidence; (4) that the trial judge erred during the sentencing phase of his trial in permitting the State to introduce evidence that the defendant had been previously convicted of grand larceny and of attempt to commit a felony, to-wit: burglary of an automobile, and that, since the jury listed these two convictions as aggravating circumstances, the sentences of death by electrocution should be set aside and a new trial ordered with respect to sentencing; (5) that the trial judge erred during the sentencing phase of the trial in stating to the jury, in response to a question from them, that it was common practice in indictments for homicide to charge

the defendant with first degree murder and that pursuant thereto the jury would find the defendant guilty of that charge or one of the lesser included offenses or the defendant would plead guilty to a lesser included offense as a product of plea bargaining.

We find no error in the convictions and affirm them, but it is our conclusion that reversible error was committed in the sentencing phase of the trial and, accordingly, we set aside the sentence of death by electrocution and award a new sentencing hearing.

## I

Early in September, 1980, the defendant burglarized a residence in Dunlap, Sequatchie County, Tennessee, and stole several firearms therefrom. The defendant took two of these firearms, .22 caliber rifles, to the mobile home residence of the victim Raymond Harris, an 84 year old man who lived alone on Granny Walker Cemetery Road on Daisy Mountain in Hamilton County, and sold or pawned the two rifles to Mr. Harris for the sum of $100.00. This transaction occurred on or about September 6, 1980.

Then, in the early evening of September 8, 1980, the defendant went back to the home of Raymond Harris and demanded the return of the two rifles. The defendant did not testify as a witness before the jury, but, in the statement that he gave to officers following his arrest, he explained what happened as follows:

"Officer Baker: Okay, go ahead from there.

"Johnson: I asked him I said, Raymond have you still got those guns that I brought up here? He said, yeah; I said, well I am getting in trouble over them, I need them, and I want to take them back to the preacher that they come from to see, you know, to give them back to him. And he said, I bought them guns. I said let me have them to take them back to keep me from getting locked up, and he said, no, I said, well I'm just going to get them

and take them anyway. By then, he hit at me and when he did, I just went off.

"Officer Baker: Okay, now what did you do?

"Johnson: He kept shoving and picked up something setting on the table, I think it was setting there.

"Baker: What did it look like?

"Johnson: A quart jar I think, that's what I thought it was.

"Baker: And how many times did you hit him?

"Johnson: Twice I think.

"Baker: Okay, when you say you hit him twice, where do you think you hit him twice?

"Johnson: I don't know, I couldn't even see him.

"Baker: Okay, but you did hit him twice?

"Johnson: Yeah.

"Baker: W.K. there was a board, a 2 × 4 or a 2 × 2, that was used also, where did you pick this up at?

"Johnson: I don't know. I don't know.

"Baker: Okay, now, Mr. Harris had several hundred dollars on him, is that correct?

"Johnson: I don't know if he had $200.00 on him.

"Baker: Okay, he had $200.00 on him, where was this money?

"Johnson: In his shirt pocket.

"Baker: And did you take that $200.00?

"Johnson: Yeah.

"Baker: Okay, now what did you do and how did you, okay, before I ask you that question you hit only twice, you took the $200.00, was he facing up or was he facing down when you got the money out of his pocket?

"Johnson: Facing up.

"Baker: Okay, now did you ever look in his billfold?

"Johnson: No.

"Baker: Did you ever turn him over?

"Johnson: No.

"Baker: Okay, now, you hit him he's fell down on the floor you took his money is that correct?

"Johnson: Yeah.

"Baker: Okay, then what did you do?

"Johnson: I got them old guns and walked down the road with them.

"Baker: Okay, when you walked down the road with the guns you are referring back down Poe Road?

"Johnson: Yeah.

"Baker: What did you do with the guns?

"Johnson: I laid them down on the side of the road.

"Baker: You talking about the bushes?

"Johnson: Yeah.

"Baker: How many guns did you have?

"Johnson: Four. Probably five.

"Baker: You had four or five guns. Two of those guns were, only two of those guns were the guns that you took over there is that correct?

"Johnson: Yeah.

"Baker: The other two were whose?

"Johnson: Raymond's or somebody's.

"Baker: But they were guns that were there at the trailer.

"Johnson: Yeah.

"Baker: Then what did you do?

"Johnson: I walked to Daisy and got the truck come back."

The defendant left the victim dying in his mobile home residence, hid the guns in bushes alongside the road and then walked back to Daisy, Tennessee, where at about 2:30 a.m. on September 9, 1980, he purchased a red Ford pickup truck for the sum of $200.00 and proceeded back up the mountain to the point where he had hidden the guns taken from Harris, loaded the guns and drove to Sequatchie County.

On September 9, 1980, Terry Francis Harris, a relative of the victim went to the mobile home residence of the victim and found him, dead. The death was reported to the office of the Hamilton County Sheriff and an investigation immediately ensued. The investigation revealed that the victim had been struck about his head more than once with a candle holder but that one particularly severe blow had killed him. This was a blow over his left ear which left a four-inch laceration and caused a massive fracture of his skull on the left side. Dr. Jack Adams, the county medical examiner, testified that the main cause of death was this massive skull fracture. Fragments of a reddish orange colored heavy glass candle holder were found in and about the victim's wounds. When the victim was found, his body was lying face down in his trailer with his head on the couch and the remainder of his body in the floor.

Meanwhile, early on the morning of September 9, 1980, Jerry Randall Johnson, the chief deputy sheriff of Sequatchie County, received a telephone call from a confidential informant who related that the defendant was then in possession of guns stolen from Reverend Russell's residence in Dunlap, Tennessee, and was at or near the Smith residence behind the school in the Lusk Community of Bledsoe County and was attempting to sell the guns to obtain money for use in going to Indiana. The informant gave the deputy the license number of the truck as well as a detailed description thereof. The deputy knew that the informant was not a person involved in criminal activity but was a member of a "Christian family." Moreover, he knew of the defendant's past involvement in thefts and dealing in stolen property. Since the Lusk Community was in Bledsoe County, thus outside the normal jurisdiction of the deputy, he radioed the Sheriff's Department of Bledsoe County, explained his mission and the exigent circumstances and requested permission for him to proceed to apprehend the defendant in Bledsoe County and also asked that Bledsoe County officers join him in that endeavor, all of which was agreed.

Deputy Johnson, accompanied by Sheriff Hickey of Sequatchie County and a constable of Sequatchie County, then proceeded to the Lusk Community of Bledsoe County and parked their patrol car near the Smith residence. Soon, they saw approaching them the red Ford pickup truck bearing the Tennessee license number which had

been reported to the deputy by the confidential informant and observed the defendant riding as a passenger in the truck which was driven by another person. They proceeded to halt the movement of the pickup truck and were approaching the occupants thereof when Deputy Sheriff Seals from Bledsoe County arrived and joined the Sequatchie officers. The officers asked the defendant for permission to search his pickup truck and the defendant orally granted such permission. The defendant was drinking beer at this time, he "was drinking a little" but was not "too drunk—not too drunk to drive." He had blood on his shoes, his hand was "cut open" and he bore "scratches on his hands and stuff." Beneath a piece of linoleum in the back of the truck were discovered several firearms the serial numbers of two of which showed that they had been stolen from the parsonage in Dunlap. The defendant was arrested and taken to jail in Sequatchie County. This arrest of the defendant occurred at about 9:00 a.m.

Later in the day Hamilton County officers were informed that the defendant was in jail in Dunlap. The investigation in Hamilton County led officers there to believe that the defendant was the last person to have been with the victim prior to his death; consequently, they proceeded to Dunlap to interrogate the defendant early in the evening of September 9, 1980.

The defendant's statement was recorded on a cassette tape, Detective Baker asking the questions in the presence of Detective Parham and Officer Swafford. Respecting the defendant's condition at that time, Detective Parham testified that, while the defendant appeared to be "nervous and shaking," he was not drunk, that he advised the defendant of his rights pursuant to the *Miranda* decision and that the defendant signed a form volunteering to give his statement and stating that he did not desire the services of a lawyer. Detective Baker testified that when the interrogation first began the defendant appeared to be very nervous but that he soon calmed down as the questioning proceeded. Detective Baker testified positively that the defendant was not intoxicated and that his statement was in all respects voluntary. By his own admission, the defendant, who has an extensive criminal record, had had his *Miranda* rights explained to him on "five to ten" different prior occasions. The defendant also admitted that the officers "didn't make" him sign the waiver of his *Miranda* rights.

The defendant testified out of the presence of the jury in support of his motion to suppress the confession taken from him that he was "doped up and drunk" at the time the statement was taken and that he asked for an attorney which was refused. However, the trial judge accepted the version given by the officers; we find ample evidence to support that finding.

The defendant's statement was transcribed to typewriting and was admitted into evidence and is in the record. If its admission was proper, it affords ample evidence of the defendant's guilt of both the armed robbery and first degree murder.

## II

The defendant contends that the search of his pickup truck, the seizure of the firearms found therein and his arrest on that occasion were all conducted in violation of his constitutional rights and, therefore, that his subsequent confession was also invalid and should not have been admitted. We find no error in the search, seizure or arrest and, therefore, affirm the holding of the trial court that the confession was admissible.

■ The officers had abundant probable cause to halt the defendant and his pickup truck and to search the same. Deputy Johnson had received a telephone call from a confidential informant that the defendant had in his possession in his pickup truck several guns taken during the burglary of a parsonage in Sequatchie County. The informant gave the license number as well as a full description of the pickup truck to Deputy Johnson. The informant told the deputy that he had seen the guns in the truck within the last hour and that the

defendant Johnson would be around the Smith's residence behind Lusk School in Bledsoe County. The informant told the deputy that if he wanted the guns he would have to act quickly because the defendant was planning to sell the guns and use the money to go to Indiana. Although Deputy Johnson did not know his informant well he did know that he or she was a person with no criminal record who was not engaged in criminal activities; moreover, he knew that the informant was from a "good Christian family" and that he or she would not have had any knowledge of the guns in question but for the fact that he or she had seen them in the defendant's possession as related to the deputy.

The detailed information thus given by the unnamed informant was corroborated, in part, by the officer before the vehicle was stopped. The Tennessee motor vehicle license number and the description of the vehicle matched that given by the informant. This justified the officers in relying upon the additional information received from the informant that the stolen guns were in the truck in which the defendant was a passenger. Moreover, Deputy Johnson knew the defendant from previous arrests and knew that he dealt in stolen goods and was aware of his reputation with regard to dealing in stolen goods. All of this information combined with the knowledge which Deputy Johnson had of the burglary in Sequatchie County constituted reasonable and probable cause for the halting of the vehicle. *Thompson v. State,* 185 Tenn. 73, 74, 203 S.W.2d 361 (1947); *Jones v. State,* 161 Tenn. 370, 375, 33 S.W.2d 59, 61 (1930).

■ The defendant's contention that Chief Deputy Johnson was acting without authority because he was outside his home county of Sequatchie is without merit. It is provided by T.C.A., § 40–7–109, that:

"(a) A private person may arrest another:

(1) . . .

(2) When the person arrested has committed a felony, although not in his presence;

(3) When a felony has been committed, and he has reasonable cause to believe that the person arrested committed it."

Clearly, under these provisions Deputy Johnson, even if limited to the authority of a private person, was authorized to effect the arrest of the defendant in the circumstances related in this case. *Francis v. State,* Tenn.Cr.App., 498 S.W.2d 107 (1973). Therefore, we need not decide whether Deputy Johnson had been appointed a special deputy by the sheriff of Bledsoe County on this occasion, as authorized by T.C.A., § 8–8–212, which would have clothed him with the authority granted to an officer to arrest without a warrant under the provisions of T.C.A., § 40–7–103, as insisted by the State.

■ Both Deputy Seals of Bledsoe County and Chief Deputy Johnson of Sequatchie County requested permission of the defendant to search his pickup truck and such permission was granted orally by the defendant. The trial court so found and we find adequate evidence to support that finding. *Houston v. State,* Tenn., 593 S.W.2d 267, 270–71 (1980); *Shafer v. State,* 214 Tenn. 416, 381 S.W.2d 254, 258–59 (1964).

The evidence does not preponderate against the finding of the trial court that the defendant, at the time he gave consent to search his truck, did not lack mental capacity to do so because of intoxication; Chief Deputy Johnson testified that although the defendant "was drinking a little" he was not drunk and not too intoxicated to lawfully drive a motor vehicle.

■ The search by the officers revealed five or six firearms hidden under a carpet in the back of the pickup truck. Two of these firearms bore serial numbers which matched those of guns taken from the home of the Reverend Russell which had been burglarized in Sequatchie County. Clearly then, the officers were justified and authorized to arrest the defendant for the offense of concealing stolen property in Bledsoe County and the offenses of burglary and larceny in Sequatchie County.

## III

■ The defendant's contention that his confession was involuntary is without merit. He contends that he was "doped up and drunk" and that he requested the services of a lawyer but was refused one at the time the statement was made. The trial court found that the statement was voluntarily and knowingly given, that the defendant's *Miranda* rights were explained to him and that he waived them. We find ample evidence to support these findings of the trial court.

At the hearing on the defendant's motion to suppress his statement, the defendant's factual contentions were contradicted by the testimony of Detectives Parham and Baker of the Hamilton County Sheriff's Department as well as by the defendant's own recorded statement. Detective Roy Parham testified that the defendant was "nervous, shaking," but was sober when the statement was taken in the Sequatchie County jail on the evening of September 9, 1980, ten to twelve hours after the defendant's arrest at 9:00 a.m. in Bledsoe County. Detective Parham also testified that he advised the defendant of his constitutional *Miranda* rights, that the defendant voluntarily and knowingly signed a printed form waiving those rights and agreeing to make the statement and that the defendant did not ask to consult a lawyer at any time during the taking of his statement.

Detective Baker, who actually interrogated the defendant while his statement was being recorded on a tape recorder in the presence of Detective Parham, testified that when the questioning began the defendant was very nervous but soon became calm as the questioning proceeded; that the defendant was not intoxicated and that his statement was voluntary. Detective Baker also testified that the defendant was advised of his constitutional rights by Detective Parham in the presence of officers Swafford and Baker before the questioning began.

■ A trial court's factual determination of the voluntariness of a defendant's confession and of compliance with the requirements of the *Miranda* decision is conclusive on appeal if there be any material evidence to support the determination. *State v. Pritchett*, Tenn., 621 S.W.2d 127 (1981). As indicated, we find ample evidence in the record to support the findings of the trial court in this regard and, therefore, conclude that the trial court did not err in admitting the recorded statement of the defendant, as transcribed, into evidence on behalf of the State.

## IV

The defendant contends that the evidence presented was not sufficient to support the verdict finding him guilty of murder in the first degree [1] or the verdict finding him guilty of armed robbery.

■ More specifically, the defendant contends that the evidence fails to support a finding that he killed with premeditation or that he killed the victim in the perpetration of, or attempt to perpetrate, the offense of robbery. We conclude, however, that the evidence is sufficient to support the verdict of murder in the first degree. Although the indictment in this case is in common law form and does not specifically mention that the killing was committed in the perpetration of, or attempt to perpetrate, robbery, the charge may be proven with evidence that the killing was committed in the perpetration of or attempt to

1. Murder is defined by T.C.A., § 39–2–201, as follows:
   "If any person of sound memory and discretion, unlawfully kill any reasonable creature in being, and under the peace of the state, with malice aforethought, either express or implied, such person shall be guilty of murder."
   First degree murder is defined by T.C.A., § 39–2–202, as follows:
   "(a) Every murder perpetrated by means of poison, lying in wait, or by other kind of willful, deliberate, malicious and premeditated killing, or committed in the perpetration of, or attempt to perpetrate, any murder in the first degree, arson, rape, robbery, burglary, larceny, kidnapping, aircraft piracy, or the unlawful throwing, placing or discharging of a destructive device or bomb, is murder in the first degree."

perpetrate robbery or one of the other felonies named in the statute. *Sullivan v. State,* 173 Tenn. 475, 121 S.W.2d 535 (1938); *Tosh v. State,* Tenn.Cr.App., 527 S.W.2d 146 (1975); *State v. King,* 24 Utah 482, 68 P. 418 (1902); *People v. Lytton,* 257 N.Y. 310, 178 N.E. 290, 79 A.L.R. 503 (1931); *Knight v. State,* Fla., 338 So.2d 201 (1976).

The evidence in this case, including the defendant's own statement, is quite sufficient to prove that the defendant committed this homicide in the perpetration of robbery of the victim. The proof, then, is sufficient to sustain the verdict of guilty of murder in the first degree.

█ The evidence supports the theory of the State that the defendant went to the victim's residence to demand the return of firearms which he had earlier pawned or sold to him, that the victim refused and resisted the defendant's demand and that the defendant used such force and violence to wrest the firearms from the victim that wounds were inflicted resulting in the victim's death. Moreover, the evidence further shows that the defendant took money from the victim on this occasion. This being the case, it was not necessary that the State prove an intention to kill or that the crime was committed deliberately and premeditatedly. *Farmer v. State,* 201 Tenn. 107, 296 S.W.2d 879 (1956).

### V

█ The defendant's contention that he lacked the mental capacity to commit the crimes of murder and robbery because of his intoxication is without merit. There is evidence in the record from witnesses, Benton Harris, Ed Sapp and Willy L. Harris, who observed the defendant shortly before and shortly after the killing which shows that he was not intoxicated.

### VI

█ The defendant's contention that the evidence is insufficient to support his conviction of the offense of armed robbery is without merit. The proof shows that with force and violence he took from the victim both firearms and money. Moreover, the evidence fails to show that he lacked mental capacity to commit the crime.

### VII

In the sentencing phase of the trial the State proved that the defendant had been previously convicted of second degree murder which, of course, was proper as showing an aggravating circumstance set out in T.C.A., § 39–2–203(i)(2); but, the State was further permitted to prove, over the objection of the defendant, that the defendant had also been previously convicted and sentenced for the offenses of grand larceny and attempt to commit a felony, to-wit: burglary of an automobile.

The jury in fixing the sentence of death by electrocution found as a part of its verdict two statutory aggravating circumstances, as follows:

"2. The defendant was previously convicted of one or more felonies, other than the present charge, which involved the use or threat of violence to the person. "To-wit: guilty plea to: second degree murder; grand larceny; burglary auto. "7. The murder was committed while the defendant was engaged in committing or was an accomplice in the commission of, or was attempting to commit, or was fleeing after committing or attempting to commit, any first degree murder, arson, rape, robbery, burglary, larceny, kidnapping, aircraft piracy, or unlawful throwing, placing or discharging of a destructive device or bomb. "To-wit: first degree murder during armed robbery."

No evidence was offered to show that the convictions for grand larceny and attempt to commit a felony, to-wit: burglary of an automobile, involved the use or threat of violence to the person.

The death penalty statute in this respect is quite specific. T.C.A., § 39–2–203, provides, in pertinent part, as follows:

"(i) No death penalty shall be imposed but upon a unanimous finding, as heretofore indicated, of the existence of one or

more of the statutory aggravating circumstances, which shall be limited to the following:

(1) . . . .

(2) The defendant was previously convicted of one or more felonies, other than the present charge, *which involved use or threat of violence to the person;* . . ." (Emphasis added.)

Moreover, in several decisions of this Court we have held that when the State seeks to rely upon convictions of what are essentially crimes against property in order to establish an aggravating circumstance under subsection (i)(2) of the foregoing statute it must be shown that there was, in fact, either violence to another or the threat thereof, although this would not generally be required if the conviction were for rape, murder, or other crime which, by definition, involves the use or threat of violence to the person. Therefore, we hold that the trial court erred in allowing evidence to be introduced of these two convictions, grand larceny and attempt to commit a felony, to-wit: burglary of an automobile, there being no evidence whatever that either involved the use of violence or threat of violence to the person. *See, State v. Moore,* Tenn., 614 S.W.2d 348 (1981); *State v. Teague,* Tenn., 645 S.W.2d 392 (1983); *State v. Adkins,* Tenn., 653 S.W.2d 708 (1983).

Since the jury properly found that two aggravating circumstances did exist, namely, that the murder was committed while the defendant was engaged in committing or attempting to commit the felony of armed robbery and that the defendant had been previously convicted of the felony of second degree murder which, of course, did involve the use or threat of use or violence to the person, the death sentence in this case could be supported by the record were it not for the fact that the court erred in allowing the introduction of evidence of the defendant's prior convictions of grand larceny and attempt to commit a felony. The question thus arises whether or not the error thus committed was so prejudicial as to require a reversal. Faced with this same problem in

at least two other cases, this Court has unanimously held that

"the probability of prejudice resulting from the consideration of the improperly admitted evidence, in our opinion, requires that the sentence of death be reversed and the cause be remanded to the trial court for a sentencing hearing." *State v. Teague, supra; State v. Adkins, supra.*

This conclusion is supported by the action of the Supreme Court in the recent case of *Zant v. Stephens,* 456 U.S. 410, 102 S.Ct. 1856, 72 L.Ed.2d 222 (1982). In that case the jury found three aggravating circumstances and imposed the death penalty. The Supreme Court of Georgia affirmed the judgment but set aside one of the aggravating circumstances. Upon certiorari review by the Supreme Court of the United States the case was remanded to the Georgia Supreme Court for an explanation of why the elimination of one of the three aggravating circumstances found by the jury did not require a re-sentencing of the defendant.

Accordingly, we find that the probability of prejudice from the introduction of the evidence hereinabove held to have been wrongfully admitted is so great as to require a reversal of the death sentence.

We do not find it necessary to determine the validity of the further insistence of the defendant that the trial judge erred during the sentencing phase of the trial in stating to the jury, in response to a question from them, that it was common practice in indictments for homicide to charge the defendant with first degree murder and that pursuant thereto the jury would find the defendant guilty of that charge or one of the lesser included offenses or the defendant would plead guilty to a lesser included offense as a product of plea bargaining.

We find no error in the conviction and sentence for the offense of armed robbery. We find no reversible error in the conviction for first degree murder. We do find reversible error in the sentencing hearing and in the imposition of the death penalty and we, therefore, reverse and set aside the

 

sentence of death by electrocution and re-mand this cause to the trial court for a new sentencing hearing. Costs incident to this appeal are adjudged against the appellee; all other costs will be assessed by the trial court.

FONES, C.J., and COOPER, HARBISON and DROWOTA, JJ., concur.