STATE of Tennessee, Appellee,

v.

Ricky Goldie SMITH, Appellant.

Supreme Court of Tennessee,
at Jackson.

Aug. 12, 1985.

James V. Ball, Arch B. Boyd, III, Memphis, for appellant.

W.J. Michael Cody, Atty. Gen. & Reporter, Ann Lacy Johns, Asst. Atty. Gen., for appellee.

## OPINION

HARBISON, Justice.

Appellant was convicted of murder in the first degree and sentenced to death by electrocution. We affirm the judgment and the sentence.

In the late afternoon of April 21, 1982, appellant twice shot and killed 71-year-old Walter Allen while attempting to rob him. Appellant was at that time not quite 23 years of age. He and two other youths had been "cruising" in an automobile belonging to appellant's aunt after having taken appellant's sister to a bus stop. Thereafter they saw the victim walking along the street near his home, carrying a sack of groceries, as he did almost daily. Appellant was armed and decided to rob the victim, who was previously unknown to any of the three youths and who had not offered them any provocation whatever. Leaving his aunt's parked automobile, which was being driven by one of his cousins, appellant accosted the victim and demanded his money. The victim apparently resisted and sought to grapple with appellant or to apprehend him. Appellant shot the victim twice, either of the wounds being sufficient to cause death. Mr. Allen died a little over four hours later. Appellant did not pause to render aid, but fled, leaving his elderly victim lying helpless and bleeding on the sidewalk. Appellant returned to the automobile as did the only one of his companions who had left it. The other had remained in the driver's seat. The three were seen leaving the area at a high speed. A witness was able to furnish some description of appellant and the 15-year-old companion who had stepped out of the automobile with him. She was also able partially to describe the numbering on

the license plate. The automobile was discovered by police the next day and identified as belonging to appellant's aunt.

It was not until November, some seven months later, in connection with an unrelated criminal incident, that police received definite information that appellant had been involved in the murder of Mr. Allen. According to testimony at a suppression hearing, one of appellant's cousins who was in custody called appellant from the police station and was assured by appellant that he, not the cousin, was responsible for the homicide. The police contacted appellant a few days later. When he returned their telephone call they took him into custody. He later gave a statement admitting that he shot and killed Mr. Allen but contending that the shooting was accidental, rather than intentional.

The 15-year-old companion of appellant, Darrell Lipscomb (also known as Chuck Williams) testified at the trial. In his confession appellant stated that Lipscomb suggested the robbery and was with him when it was attempted. He later indicated to another relative that Lipscomb could have prevented the shooting but did not do so. Lipscomb, however, testified that the attempted robbery was appellant's own idea. He also testified that he had left the automobile after appellant, and that appellant accosted Mr. Allen some distance away. Lipscomb denied being present at the shooting, but testified that he heard two shots. He said that appellant then came running back to the automobile, and the three youths sped away. He stated that appellant told him that the victim had "tussled" with appellant and that appellant had then shot him twice. Appellant was taller than Lipscomb and his hair style matched the description given by the witness, Mrs. Settle, who saw the youths running from the area where Mr. Allen had fallen.

◼ Appellant did not testify at the trial or at the sentencing hearing, other than to take the stand in a jury-out hearing to confirm that he had been advised of his legal rights. In addition to admitting to Lipscomb and to the police that he had shot Mr. Allen, he also admitted doing so to his aunt, Mrs. Ella Mae McClain, who visited him at the jail. Although there were discrepancies between the testimony of Lipscomb and appellant's statement, and although strenuous efforts were made to impeach Mrs. McClain, these were issues which were submitted to and resolved by the jury. There is abundant material evidence in the record to support their verdict, and appellant's attack upon the sufficiency of the convicting evidence is without merit.

◼ Similarly without substance is the contention of appellant that the State's evidence fails to show premeditation and malice. Murder in the first degree is defined in T.C.A. § 39–2–202(a) as premeditated, willful, deliberate and malicious homicide, but it is also defined as including any murder committed in the perpetration of certain specified felonies, including robbery. Murder in the first degree is sufficiently shown by proof of a killing committed during one of these specified felonies. *State v. Johnson,* 661 S.W.2d 854, 860–861 (Tenn. 1983); *Tosh v. State,* 527 S.W.2d 146, 148 (Tenn.Crim.App.1975). In this and in other cases it has been suggested that a change in the wording of the first degree murder statutes from "killing" to "murder" by 1977 Tenn.Pub.Acts ch. 51, § 1, had the effect of abolishing the felony-murder rule. We do not so construe the statute and did not do so in *Johnson, supra,* in which the homicide occurred in 1980.

◼ Appellant attacks the admissibility of his confession upon the ground that it was not voluntarily given. The trial judge, however, held a full pre-trial suppression hearing and resolved the factual issues against appellant. The record fully supports his conclusion that appellant was clearly advised of his legal rights with respect to the statement, and that the statement was voluntarily given. As previously

indicated, appellant had already seriously incriminated himself in a telephone conversation, monitored by the police, in which he advised his cousin that he was responsible for Mr. Allen's death and would so inform the police.

At the time the investigation in this case was initiated, immediately after the shooting, the victim had not died. Initial police documents indicated that an aggravated assault had occurred, and the caption to appellant's statement contains the words "aggravated assault" rather than referring to a homicide. The context of the questioning itself, however, made it clear that the death of Mr. Allen was being investigated. We find no merit to the contention of appellant that he was in any way misled as to the nature of the potential charges against him. In his conversation with his cousin he had admitted knowing that Mr. Allen had died, and his contention that his formal statement was involuntary because of insufficient information as to the charges is entirely unpersuasive. Likewise we find no merit whatever to the suggestion made in appellant's brief that he lacked sufficient mental capacity to know or understand the statement made or the nature of the charges.

In his brief counsel for appellant attacks the constitutionality of the death penalty in general and of the Tennessee statute authorizing its imposition, on eleven separate grounds. None of these has been briefed or argued, but each of them has previously been considered in detail in reported decisions of this Court. We therefore see no need to examine these assignments in detail but will briefly mention some of them.

■ Appellant insists that the statute is deficient in not requiring notice of the aggravating circumstances to be relied upon by the State. This contention was rejected in *Houston v. State*, 593 S.W.2d 267 (Tenn. 1980), but, in any event, in the present case notice was given of the principal aggravating circumstance relied upon. Further,

Rule 12.3(b) of the Tennessee Rules of Criminal Procedure has been amended to require such notice for trials occurring after August 22, 1984. The present trial occurred before that date. Since notice was actually given, however, and since it was not constitutionally required, we find this issue to be without merit. Also without merit is the contention that the statutes create two separate offenses so as to pose a double jeopardy problem. This issue was considered and rejected in the *Houston* case, and in *State v. Austin*, 618 S.W.2d 738, 742 (Tenn.1981).

Each of the other contentions advanced by appellant has been carefully examined in reported decisions of the Court, and we see no need to repeat those discussions here. Appellant has advanced a five-part challenge to the felony-murder rule in cases involving murder in the first degree. These contentions were considered in *State v. Sheffield*, 676 S.W.2d 542, 551 (Tenn. 1984), where identical arguments were considered and rejected. Many of the contentions advanced by appellant in connection with the constitutional issue are not even relevant to this case, such as the validity of some of the aggravating circumstances or the responsibility of an aider or abettor.

■ Appellant has assigned as error the failure of the trial judge to permit individual examination of prospective jurors. There is no contention made in this case that any reversible error occurred during the lengthy jury examination. Further the trial judge indicated that he would grant individual examination if necessary, and some individual questioning was in fact permitted. This matter lay within the discretion of the trial judge, and we find no abuse of that discretion. *See State v. Workman*, 667 S.W.2d 44, 49 (Tenn.1984).

■ In two assignments of error counsel for appellant contends that reversible error occurred during closing argument at the guilt stage of the trial when one of the prosecuting attorneys undertook to remove

a book from counsel table and to refer to it. The book had reference to techniques in creating a reasonable doubt in the defense of criminal trials. The trial judge sustained a portion of the objections of defense counsel, and the remaining argument of the prosecutor was clearly directed toward rebuttal of the contention of counsel for appellant that .reasonable doubt had been created in this case. Indeed the principal thrust of the closing argument of counsel for the defendant was insufficiency of evidence and reasonable doubt in a number of respects, and the prosecutor was clearly entitled to respond to these contentions. In our opinion, taken in context, nothing which occurred in connection with this incident could possibly have affected the results of the trial.

In his final issue on appeal, counsel for appellant urges that the trial court committed reversible error in charging one of the statutory aggravating circumstances pertaining to an escape or an attempt to escape from lawful arrest or prosecution.

■ The State had not insisted upon this circumstance, but at the conclusion of all of the evidence, the trial judge felt that this issue was raised by the evidence sufficiently to warrant an instruction. Whether or not the trial judge was correct in this regard, the jury did not find that the appellant had committed the homicide under circumstances falling within the parameter of that statute. Accordingly it did not impose the death penalty under that aggravating circumstance or find that appellant was guilty thereof. The issue is therefore probably moot.

The trial judge objected significantly to the procedure outlined by this Court in previous decisions,[1] requiring the trial judge to charge the jury only on those aggravating and mitigating circumstances fairly raised by the evidence. He felt that a different procedure was preferable, but finally did undertake to emphasize those which the parties contended were applicable or which the court felt had been fairly raised.

There was evidence contained both in appellant's signed statement and in the testimony that the victim of the homicide in the present case, Mr. Allen, had resisted appellant's attempt to rob him and had "tussled" with him. Indeed it was the primary insistence of appellant that the shooting was accidental and was the result of this struggle.

It is basic statutory law in this state that a private person may arrest another for an offense committed in the presence of the arresting individual, or for a felony not committed in his presence. A private person may also arrest when a felony has been committed and he only has reasonable cause to believe that the arrested person committed it. See T.C.A. §§ 40-7-109(a)(1), (2), (3). A private person may even break into the dwelling house of an individual who has committed a felony after giving proper notice of his intention to make the arrest. T.C.A. § 40-7-112.

■ While the evidence in this case was brief, there was proof from which a trier of fact might have found that Mr. Allen did attempt to confine or apprehend his assailant. The charge given, therefore, was not without foundation in the record, and reversible error was not committed in permitting the jury to consider it. Since the jurors did not base their sentence on this circumstance, however, we need not consider the preponderance or weight of the evidence on the point.

■ The only aggravating circumstance found by the jurors, and the one on which the death penalty was based, was that the appellant committed the murder while engaging or attempting to engage in a robbery. T.C.A. § 39-2-203(i)(7). The evidence overwhelmingly establishes the guilt of appellant in this respect. In *State*

1. *E.g., State v. Buck,* 670 S.W.2d 600, 608 (Tenn. 1984).

*v. Prichett,* 621 S.W.2d 127, 140–141 (Tenn. 1981), the Court held that the death penalty could properly be imposed under this aggravating circumstance even though "the felony of robbery may have been used by the jury to establish that the murder was murder in the first degree . . . ." We adhere to that holding, and are of the opinion that the "underlying felony" may be used as an aggravating circumstance at the sentencing phase of the trial.

In this case there is hardly any suggestion of mitigating factors which could possibly outweigh the outrageous and totally antisocial behavior of the accused in committing this shocking homicide. The jurors were certainly not obligated to accept appellant's contention that the shooting was accidental. It was, under a clearly legitimate view of the evidence, a deliberate shooting and an attempt to remove the identity of a possible prosecuting witness, after a planned attempt at the robbery of an elderly, innocent person. It is indeed difficult, if not impossible, to explain away two fatal shots as being accidental and unintentional. This elderly victim was left by his robber on the street to die without any attempt to render aid or assistance. The accused was nearly 23 years of age. He had a criminal record, but this was not introduced before the jury. He saw fit not to take the stand at either the guilt or the sentencing phases of his trial. He was afforded a full and fair trial, and there is nothing to indicate any mitigating circumstances which could have outweighed the clearly aggravating circumstance which was proved and which was found by the jury.

It is, of course, part of the duty of this Court under the applicable statutory provisions to review a death sentence and to determine whether it was imposed in any arbitrary fashion. The Court is also required to determine whether the evidence supports the jury's finding of an aggravating circumstance and its finding of the absence of any mitigating circumstances

sufficiently substantial to outweigh the aggravating circumstances. The Court is also required to determine whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases. T.C.A. § 39–2–205(c).

 We have examined the record and the briefs and arguments of counsel with these provisions before us. We are of the opinion that the death penalty was justified in this case, and that its imposition was neither arbitrary nor disproportionate. In several other cases the death penalty has been approved where the homicide occurred during the perpetration of an armed robbery. *See State v. Harries,* 657 S.W.2d 414 (Tenn.1983); *State v. Johnson,* 632 S.W.2d 542 (Tenn.1982); *State v. Coleman,* 619 S.W. 112 (Tenn.1981); *Houston v. State,* 593 S.W.2d 267 (Tenn.1980). Numerous other cases could be cited, but we think that the foregoing sufficiently illustrate the proposition that a deliberate, wanton murder committed during the course of or in an attempt to commit an armed robbery is sufficient to warrant the death penalty where the jury finds no mitigating circumstances whatever.

The judgment of conviction and the sentence are affirmed. Unless stayed or otherwise ordered by proper authority, the sentence will be carried out as provided by law on October 18, 1985. Costs are taxed to appellant.

COOPER, C.J., and FONES and DROWOTA, JJ., concur.

BROCK, J., files a dissent.

BROCK, Justice, dissenting.

I concur in the opinion of the Court in all respects except the imposition of the death penalty. With respect to the imposition of the death penalty, I adhere to the views expressed in my dissenting opinion in *State v. Dicks,* Tenn., 615 S.W.2d 126 (1981).