## IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT KNOXVILLE

## OCTOBER SESSION, 1999

FILED

January 11, 2000

Cecil Crowson, Jr.
Appellate Court Clerk

STATE OF TENNESSEE,

      Appellee,

vs.

LACONIA LAMAR BOWERS,

      Appellant.

\*
\*    **No. E1999-00170-CCA-R3-CD**
\*
\*    **KNOX COUNTY**
\*
\*    **Hon. Richard Baumgartner, Judge**
\*
\*    **(Second Degree Murder)**
\*

For the Appellant:

**William C. Talman**
Attorney for Appellant
P. O. Box 506
Knoxville, TN 37901-0506

For the Appellee:

**Paul G. Summers**
Attorney General and Reporter

**Elizabeth B. Marney**
Assistant Attorney General
Criminal Justice Division
425 Fifth Avenue North
2d Floor, Cordell Hull Building
Nashville, TN 37243-0493

**Randall E. Nichols**
District Attorney General

**Sally Jo Helm**
Asst. District Attorney General
City-County Building
Knoxville, TN 37902

OPINION FILED: _____

AFFIRMED

**David G. Hayes,** Judge

## OPINION

The appellant, Laconia Lamar Bowers, appeals his conviction by a Knox County jury finding him guilty of second degree murder. The trial court imposed a sentence of twenty-four years to be served in the Department of Correction. The appellant raises three issues on appeal: (1) whether second degree murder is a lesser included offense or a lesser grade offense of felony murder; (2) the sufficiency of the evidence for second degree murder; and (3) the "excessive" sentence.

Following review, we affirm the judgment of the trial court.

## Background

On April 21, 1996, Peter Whatmough and Stacy Yessler were traveling through Knoxville en route from Florida to Ohio. Early that afternoon, Whatmough and Yessler had driven to the Walter P. Taylor housing project and purchased three rocks of crack cocaine. After smoking these rocks at their motel, they returned to the housing project to purchase more crack cocaine. While driving slowly in the area, Yessler recognized the person, Artis Bonner, whom she had bought crack cocaine from earlier that day. Bonner was summoned to the vehicle to discuss the contemplated drug transaction. In furtherance of the arrangement, Bonner left the vehicle and entered one of the apartments to obtain the cocaine.

A few minutes later, Bonner returned running to the van, got into the vehicle, and told Whatmough and Yessler to "hurry up and get on out of there." As Whatmough started the engine and placed the vehicle in drive, he was fatally shot in the head. Yessler and Bonner were both grazed by the bullet. During the homicide investigation, Bonner gave the police a statement that the appellant, who he knew by the name of Coney, was the person who shot the victim. At trial, Bonner identified the appellant as the person that he saw at the window of the van at the

2

time Whatmough was shot. Bonner related that he was in a hurry because he feared that someone else would "get his sale." At trial, Bonner recanted substantial portions of his testimony during further examination and denied memory of providing a prior statement to the police that "Coney" had shot them. Bonner admitted that he was originally charged with murder in this case and explained that he implicated the appellant in order to get out of jail. At the time of trial, Bonner was serving a sentence in the Department of Correction.

Another witness, Regina Chatham, testified that she saw the appellant in the area when the shooting occurred but recanted an earlier statement to the police that she saw the appellant running away from the scene with a gun. Chatham, who lived in the housing projects, claimed that she was mad at the appellant when she provided police with the earlier statement.

The appellant was charged in a two-count indictment with alternative counts of felony murder, *i.e.*, murder in the perpetration of a robbery and murder in the perpetration of a theft. At the conclusion of the State's proof, defense counsel moved for a judgment of acquittal for felony murder in perpetration of a robbery and for felony murder in perpetration of a theft upon grounds that no underlying felony had been proven. The State conceded and the trial court properly granted dismissal of both counts of felony murder. The defense presented no proof. The trial court instructed the jury on second-degree murder, reckless homicide, and criminally-negligent homicide as lesser included offenses. The jury returned a verdict of guilty of second degree murder.

## I. Lesser-Included/Grade Offense

The appellant argues that the trial court erred by instructing the jury on the

offense of second degree murder. Specifically, the appellant contends that second degree murder is not a lesser offense of felony murder. At the time of the appellant's indictment, the issue of lesser included/ lesser grade offenses was controlled by State v. Trusty, 919 S.W.2d 305 (Tenn. 1996). Under State v. Trusty, second degree murder was a "lesser grade" offense of felony murder. However, we are required to revisit this issue in light of our supreme court's recent decisions in State v. Brenda Anne Burns, W1996-00004-SC-R11-CD (Tenn. Nov. 8, 1999) (for publication) and State v. Terry Allen Dominy, M1995-00001-SC-R11-CD (Tenn. Nov. 8, 1999) (for publication).

Finding the rationale utilized in reaching its decision in Trusty was unsound and "unworkable," our supreme court in State v. Brenda Anne Burns and State v. Terry Allen Dominy, overruled the language in Trusty that purported to require jury instructions and to allow convictions for lesser "grades" or "classes" of offenses in addition to "lesser included" offenses." See State v. Brenda Anne Burns, No. W1996-00004-SC-R11-CD at 20; State v. Terry Allen Dominy, No. M1995-00001-SC-R11-CD at 2. In addition to eliminating lesser grade offenses as lesser offenses, the supreme court adopted a three part test for determining whether an offense is a lesser included offense of that charged in the indictment. Specifically, the supreme court provided:

> An offense is a lesser-included offense if:
>
> (a) all of its statutory elements are included within the statutory elements of the offense charged; or
>
> (b) it fails to meet the definition in part (a) only in the respect that it contains a statutory element or elements establishing
>     (1) a different mental state indicating a lesser kind of culpability; and/or
>     (2) a less serious harm or risk of harm to the same person, property or public interest; or
>
> (c) it consists of
>     (1) facilitation of the offense charged . . . ; or
>     (2) an attempt to commit the offense charged . . .;or

(3) solicitation to commit the offense charged . . . .[1]

State v. Brenda Anne Burns, No. W1996-00004-SC-R11-CD at 22-23.

We in turn examine Sections (a) and (b) for determination of the lesser included issue presented.

## Section (a)

This test, sometimes referred to as the statutory elements approach, requires a strict comparison between the statutory elements of the offense charged in the indictment with the elements of the lesser offense at issue. State v. Brenda Anne Burns, No. W1996-00004-SC-R11-CD at 18. Under this approach, an offense is not "necessarily included" in another unless the elements of the lesser are a subset of the elements of the charged offense. Id. Comparison of the elements of the indicted offense, felony murder, and the lesser offense, second degree murder, reveals that they are incongruent and therefore the latter is not a subset of the former. Second degree murder is "[a] knowing killing of another." Tenn. Code Ann. § 39-13-210(a)(1) (1995 Supp.). Felony murder, at the time of the offense, was defined as the "killing of another committed in the perpetration of or attempt to perpetrate" a specifically enumerated felony. Tenn. Code Ann. § 39-13-202. Accordingly, second degree murder is not a lesser included offense of felony murder within the definition of section (a) of the Burns/Dominy test.

## Section (b)

Section (b) of the Burns test permits the finding of a lesser included offense when the elements of the lesser establish (1) a differing mental state indicating a

---

[1] It is obvious that second degree murder, a knowing killing of another, is a completed offense and, as such, does not constitute the offenses of facilitation, attempt or solicitation under part (c) of the Burns/Dominy test. See State v. Brenda Anne Burns, No. W1996-00004-SC-R11-CD at 22.

lesser kind of culpability and/or (2) a less serious harm to the person than that of the greater offense. Clearly, in all crimes of homicide, the harm is the same, *i.e.*, the death of another person. Thus, the test for determining lesser included offenses within a homicide prosecution is whether the elements of the lesser homicide establish that the culpability is of a lesser degree than that of the greater homicide. State v. Brenda Anne Burns, No. W1996-00004-SC-R11-CD at 21-22. In this case, the question posed is whether second degree murder constitutes a lesser kind of culpability than is required for felony murder.

What separates all homicide offenses is the level of culpability that they reflect; indeed, Tennessee has divided homicide offenses into degrees and the punishments are graded to meet the circumstances of the particular case, including particular mitigating elements that distinguish a lower degree homicide from a higher. Our legislature has assigned the offense of felony murder, along with premeditated murder, the highest degree of penal sanction. This state has but one first degree murder statute. See Tenn. Code Ann. § 39-13-202. Premeditated murder, Tenn. Code Ann. § 39-13-202(a), and felony murder, Tenn. Code Ann. § 39-13-202(b), are not denominated in our code as separate and distinct offenses, but rather as alternative means by which criminal liability for first degree murder may be charged and prosecuted. The distinction between a charge of first degree premeditated murder and felony murder is a difference in the State's theory of how the defendant committed the offense of first degree murder.

In Farmer v. State, 296 S.W.2d 879 (1956), our supreme court, while rejecting the argument that a conviction for felony murder did not constitute first degree murder, held:

> [I]t is not necessary that the State prove an intention to kill or that it was committed willfully, deliberately, premeditatedly and with malice

6

aforethought. The statute supplies the elements necessary to a conviction of murder in the first degree. In other words, "*the premeditated intent to commit a felony or other criminal acts is, by implication of law, transferred from that offense to the homicide actually committed, so as to make the latter offense a killing with malice aforethought constituting murder in the first degree.*"

"The perpetration of the felony, during which a homicide occurs, is the legal equivalent of premeditation, deliberation and malice." State v. Beasley, 699 S.W.2d 565, 567 (Tenn. Crim. App. 1985) (citing Sullivan v. State, 173 Tenn. 475, 121 S.W.2d 535 (1938)). This concept of transferred intent remains embodied in our felony murder statute which provides that "no culpable mental state is required for conviction under subdivision (a)(2) [felony murder]," except the intent to commit the enumerated offenses or act in such subdivision. Tenn. Code Ann. § 39-13-202(b).

In this state, it is well-settled that once a homicide is established it is presumed to be second degree murder. See State v. Gentry, 881 S.W.2d 1, 4 (Tenn. Crim. App. 1993). In order to elevate the offense from second degree murder to first degree murder, the State must prove either that the homicide was committed with premeditation or that the homicide was committed during the perpetration of a statutorily enumerated felony. See Gentry, 881 S.W.2d at 4. The culpable mental state for murder in the second degree is that of "knowing." Tenn. Code Ann. § 39-13-210 (a)(1). This differing mental state obviously indicates a lesser kind of culpability than required for felony murder. Accordingly, the offense of second degree murder is a lesser included offense of first degree murder, including commission of the homicide during the perpetration of a statutorily enumerated offense.

Having concluded that second degree murder is a lesser offense of felony murder, we nonetheless address the appellant's argument that his conviction for second degree murder cannot stand because his indictment for felony murder failed to provide "fair and reasonable notice [to him]" that he would be required to defend upon a charge of second degree murder. Initially, we note "that as a matter of law

7

and pleading practice before the wholesale changes in our criminal code in 1989, proof of a killing in the perpetration of a statutorily enumerated felony (felony murder) supported and sustained a conviction for first degree murder even though the allegations of the indictment were in terms of a premeditated and deliberate murder (known as the common law form of murder)." Rickman v. State, 972 S.W.2d 687, 699 (Tenn. Crim. App. 1997) (Tipton, J., concurring) (citing State v. Johnson, 661 S.W.2d 854, 860-61 (Tenn. 1983); Tosh v. State, 527 S.W.2d 146, 148 (Tenn. Crim. App. 1975); Sullivan, 173 Tenn. 475, 121 S.W.2d at 537. Moreover, for purposes of notice, as a general rule, an indictment which charges any one of the various degrees of criminal homicide is deemed to include all lower grades or degrees of homicide. See State v. Henderson, 424 S.W.2d 186, 188 (Tenn. 1968). Accordingly, we find the appellant's "notice" argument without merit.

## II. SUFFICIENCY OF THE EVIDENCE

In this case, the State proceeded to trial under the theory of felony murder. In order to convict, the State was required to prove: (1) the appellant committed the underlying felony and (2) the appellant caused the death of the victim. Because no underlying felony was proven at trial, the trial court entered a judgment of acquittal for felony murder. Thus, the remaining factual issue for the jury was to determine whether the appellant caused the death of Whatmough, and, if so, the degree of homicide committed. As such, we review for a determination of whether the evidence supports the appellant's conviction for second degree murder.

In State v. Brenda Anne Burns, No. W1996-00004-SC-R11-CD at 26-27, the supreme court provided a two part test for determining when a lesser included instruction should be given:

> First, the trial court must determine whether any evidence exists that reasonable minds could accept as to the lesser-included offense. In making this determination, the trial court must view the evidence liberally in the light most favorable to the existence of the lesser-included offense without making any judgments on the credibility of such evidence.

8

Second, the trial court must determine if the evidence, viewed in this light, is legally sufficient to support a conviction for the lesser-included offense.

In his sufficiency argument, the appellant contends that the State presented "no credible witness who actually saw [the appellant] raise or fire a weapon." The appellant discredits Bonner's testimony as that of an admitted drug dealer and "an obvious liar who spun a tale to save his own skin when he was charged with this murder and sitting in jail." Moreover, he contends that Chatham's testimony should be disregarded because "she is a drug user who most likely had a stash in her home" and was admittedly angry with the appellant because the police were in her home and because the appellant kept her boyfriend out late at night. Finally, he contends that since the gun was not found and no motive for the shooting uncovered, no physical evidence links him to the crime.

When a challenge is made on appeal to the sufficiency of the convicting evidence, Tennessee Rule of Appellate Procedure 13(e) provides that findings of guilt "shall be set aside if the evidence is insufficient to support the finding by the trier of fact of guilt beyond a reasonable doubt." See also Jackson v. Virginia, 443 U.S. 307, 317, 99 S.Ct. 2781, 2789 (1979). The jury conviction removes the presumption of innocence from the defendant and replaces it with one of guilt; thus, on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). Moreover, the State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992), cert. denied, 507 U.S. 954, 113 S.Ct. 1368 (1993). This court may not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). These principles are applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). However, if a conviction is based purely on circumstantial

9

evidence, the facts and circumstances must be so overwhelming as to exclude any other explanation except for the defendant's guilt. State v. Tharpe, 726 S.W.2d 896, 900 (Tenn.1987).

The appellant's assault upon the veracity of the witnesses, Bonner and Chatham, is, in effect, a "jury argument" and would require us to assess witness credibility. A jury verdict accredits the testimony of the State's witnesses and resolves all conflicts in favor of the State's theory. State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). The weight and credibility of witnesses' testimony are exclusively within the province of the jury as the trier of fact. State v. Locust, 914 S.W.2d 554, 558 (Tenn. Crim. App.), perm. to appeal denied, (Tenn. 1995). In conducting a sufficiency review, we consider only that evidence which is favorable to the State. The proof established that Bonner identified the appellant as the person he saw at the window of the van at the moment the driver, Whatmough, was fatally shot.[2] Although his testimony was equivocal, it remained the jury's prerogative to disregard his recantation. Moreover, Chatham's original statement implicated the appellant in the shooting and again the jury disbelieved her recantation. The credible testimony of one identification witness is sufficient to support a conviction if the witness viewed the accused under such circumstances as would permit a positive identification to be made. See State v. Strickland, 885 S.W.2d 85, 87-88 (Tenn. Crim. App. 1993). Further, although inconsistencies or inaccuracies may

---

[2]Q: (Prosecutor) Now, you saw somebody at the window of that van, didn't you?
A:(Bonner) Right
Q:(Prosecutor) Who was that? Who was it, Mr. Bonner?
A:(Bonner) I don't know his name.
Q:(Prosecutor) You don't know his name. You remember --
A:(Bonner) I just knew him by his nickname.
Q:(Prosecutor)Well, what is his nickname?
A:(Bonner) Coney.
. . .
Q:(Prosecutor) After you saw him at the window of the van, what did you hear?

A:(Bonner) When we was [sic] pulling off, I heard a gunshot. I just seen him for a second when we was pulling off. . . .
. . .
[The witness then identified the appellant as the person he saw at the window.]

make the witness a less credible witness, the jury's verdict will not be disturbed unless the inaccuracies or inconsistencies are so improbable or unsatisfactory as to create a reasonable doubt of the appellant's guilt. The verdict of the jury in this case is supported by the evidence. The positive identification testimony of the witness, Artis Bonner, sufficiently supports the appellant's conviction; his testimony is not so improbable or unsatisfactory as to create a reasonable doubt of the appellant's guilt.

Again, once a homicide is established, it is presumed to be second degree murder. Gentry, 881 S.W.2d at 4. Second degree murder is a knowing killing of another. Tenn. Code Ann. § 39-13-210(a)(1). Under the facts of this case, we find that the proof establishes that the appellant acted "knowingly" with an awareness that the discharge of a gun into the vehicle containing three passengers was reasonably certain to cause death. See Tenn. Code Ann. § 39-11-106 (20). We conclude that there is evidence to support "knowing" conduct, and, therefore, a conviction for second degree murder.

### III. SENTENCING

The appellant contends that the trial court's misapplication of mitigating factor (6) resulted in the imposition of an erroneous sentence. See Tenn. Code Ann. § 40-35-113(6) ("[t]he defendant, because of his youth. . . , lacked substantial judgment in committing the offense.").[3] Initially, we note that the trial court ordered a presentence report; however, at the time of the sentencing hearing, the presentence report was not prepared. The trial court offered to postpone the sentencing hearing but appellant's counsel, after consultation with the appellant, urged the court to proceed in its sentencing decision without the benefit of the statutorily mandated report. See Tenn. Code Ann. § 40-35-205(a); 210(b)(2) and (g).

---

[3]The appellant also argues that the trial court's failure to consider non-enumerated factors under Tenn. Code Ann. § 40-35-113(13), based upon the appellant's stepfather's testimony at the hearing suggesting amenability of the appellant for rehabilitation, was error. However, because the appellant was convicted of a felony requiring incarceration, rehabilitation is not at issue.

In lieu of the presentence report, the trial court allowed the appellant to present any information regarding his family background and history. The trial court attempted to gain this information from the appellant; however, he refused to testify. The appellant's stepfather did testify that the appellant had a "good raising up," completed the tenth grade, has never worked, and has two children. The court also permitted the stepfather to make a statement on behalf of the appellant. The trial court noted the appellant's three juvenile adjudications for possession of marijuana, assault, and theft, as well as, three probation revocations.

This court's review of the length, range, or manner of service of a sentence is *de novo* with a presumption that the determination made by the trial court is correct. Tenn. Code Ann. § 40-35-401(d) (1997). See also State v. Bingham, 910 S.W.2d 448 (Tenn. Crim. App.), perm. to appeal denied, (Tenn. 1995). This presumption is only applicable if the record demonstrates that the trial court properly considered relevant sentencing principles. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The record reflects that the trial court considered the relevant principles of sentencing; accordingly, the presumption is afforded. Additionally, the appellant bears the burden of demonstrating that the sentence imposed was improper. Sentencing Commission Comments, Tenn. Code Ann. § 40-35-401(d).

Initially, we note that the appellant concedes application of the following enhancement factors: (1) prior criminal history; (3) the crime involved more than one victim; (8) a previous history of unwillingness to comply with conditions for release into the community; and (12) defendant willfully inflicted bodily injury upon someone other than the victim. Tenn. Code Ann. § 40-35-114. Notwithstanding, the appellant contends that the trial court misapplied Tenn. Code Ann. § 40-35-113(6) by applying the appellant's age at the time of sentencing and not at the time of crime. Thus, he argues that because he was merely sixteen at the time of the offense, that he lacked substantial judgment while committing the offense.

12

However, the trial court declined to consider this mitigator finding, "[the appellant] is young. . . . [H]e is eighteen years old. . . . I am afraid that [the appellant] has a good deal of experience in his life, which puts him in a position much different from those of many other eighteen year old individuals."

The application of this mitigating factor is not determined simply by the chronological age of the offender but, rather, upon the offender's "youth in context" of various pertinent circumstances tending to demonstrate his or her ability or inability to appreciate the nature of his or her conduct. State v. Adams, 864 S.W.2d 31, 33 (Tenn. 1993); see e.g., State v. Antonio D. Mason, No. 01C01-9607-CC-00315 (Tenn. Crim. App. at Nashville, Oct. 24, 1997). We conclude, that even if the trial court had considered the age of the appellant at sixteen instead of eighteen, the application of the mitigator would not have changed. Thus, in view of the four enhancement factors, we find the trial court's sentence of twenty-four years appropriate in this case.

Based upon the foregoing, the judgment of conviction and accompanying sentence for second degree murder is affirmed.

_____
DAVID G. HAYES, Judge

CONCUR:

_____
GARY R. WADE, Presiding Judge

13

_____
DAVID H. WELLES, Judge