STATE of Tennessee, Appellee,

v.

Anthony L. FLYNN, Appellant.

Court of Criminal Appeals of Tennessee, at Knoxville.

March 15, 1984.

Wayne E. Uhl, Asst. Atty. Gen., Nashville, R. Jerry Beck, Stanley A. Kweller, Asst. Dist. Attys. Gen., Blountville, for appellee.

Murry C. Groseclose, III, Kingsport, for appellant.

## OPINION

DAUGHTREY, Judge.

The defendant, Anthony L. Flynn, was found guilty of three counts of sale of a controlled substance. The jury fined him $17,000, and the trial judge imposed enhanced sentences effectively totalling 20 years in the penitentiary. On appeal, Flynn argues (1) that both the seizure of certain evidence and his arrest were invalid on jurisdictional grounds; (2) that prejudicial testimony and a prejudicial photograph were improperly admitted against him at trial; and (3) that his sentences were not properly imposed and are constitutionally invalid. We find no reversible error in connection with these issues, and we therefore sustain the convictions.

The charges against Flynn resulted from an on-going drug investigation by the Kingsport Police Department. As part of an undercover narcotics operation, two college students interning in a criminal justice program were sent to Flynn's trailer home to make "buys" from Flynn. The facts of the transactions are largely undisputed.

On July 2, 1982, undercover agents Keith Brown and Susan Schrader purchased four one-ounce bags of marijuana from Flynn. On July 29, Brown and Schrader returned to Flynn's trailer and bought additional marijuana. During this second trip, Brown asked about the possibility of purchasing LSD. Flynn indicated he was expecting delivery of 200 "hits." The two college students came back the next day, and

Flynn sold them 10 small green pills containing LSD for $4.00 each.

The case against Flynn subsequently was sent to the grand jury, and Flynn was indicted and arrested on a capias warrant. Prior to trial, he moved to suppress the marijuana and LSD on the grounds that they had been obtained unlawfully. He claimed that he was illegally arrested as a result of these unlawfully obtained drugs, because his trailer was actually located 1.2 miles from the Kingsport City limits and thus was outside the jurisdiction of the Kingsport Police Department. The trial judge overruled the motion to suppress.

To support his position on appeal, the defendant relies on T.C.A. § 6-54-301, which extends "[t]he police authority of all incorporated towns and cities" one mile beyond "the lawful corporate limits thereof" and no farther. In response, the state relies on *State v. Johnson*, 661 S.W.2d 854, 859 (Tenn.1983), in which our high court recently upheld the right of local law enforcement officials to make arrests as private citizens beyond the statutory one-mile limit.

It might be argued that *Johnson* is inapplicable to the facts in this case, because the ruling in *Johnson* was predicated upon the statutory right of a citizen to arrest for a felony offense when the citizen has "reasonable cause" to believe that the person arrested is the offender. *See* T.C.A. § 40-7-109. Here the unauthorized police activity was an investigation and not an arrest, and there is no applicable statutory provision analogous to § 40-7-109 regarding investigations carried beyond the jurisdictional limits of the investigating authority. As the state points out, however, there is no legal impediment preventing a private citizen from purchasing drugs and subsequently reporting it (either directly or indirectly) to the grand jury, which is what occurred in this case. The grand jury's investigatory authority is county-wide, and hence there can be no dispute concerning the validity of the resulting presentment against Flynn for criminal activity within the county. His

arrest, based on a subsequent capias warrant, was likewise valid. The fact that a Kingsport city police officer is listed as the prosecuting witness on the presentment does not affect the validity of the presentment or of the defendant's arrest.

We thus find no error in the trial court's refusal to suppress for lack of geographical jurisdiction. Nor was there any error in the trial court's decision not to hold a full-blown suppression hearing, given the fact that defense counsel was permitted to summarize what was largely undisputed evidence on this issue. Finally, the trial court did not err in refusing to permit the defendant to present his "jurisdictional defense" to the jury. As the state notes, the issue was purely a legal question that was appropriately decided by the trial judge.

At trial, the following exchange took place during defense counsel's cross-examination of undercover agent Keith Brown:

Q. Again, that was one of your ultimate goals was to try to get Mr. Flynn to sell you some LSD, wasn't it?

A. No, sir.

Q. Well, why did you ask him about it then if you didn't want to purchase it?

A. On information received from Detective Jennings—

MR. GROSECLOSE: I object to that, Your Honor.

THE COURT: Well, your question may—

Q. Were you instructed by Detective Jennings to try to find LSD on anybody that——anybody that you were buying or trying to buy substances off? You were, weren't you?

A. Only if he's had information believing such.

The defendant suggests that the trial judge's failure to sustain his objection to Brown's "nonresponsive and prejudicial" answer amounted to a violation of due process, because it left the jury with the impression that the defendant was a "regular dealer in LSD." The state responds that the proof showed Flynn's heavy involve-ment in narcotics trafficking and that any error was harmless. The state also argues that the response, even if incompetent, was invited error.

We agree that the response was invited by an open-ended question. Moreover, defense counsel interrupted the trial judge in mid-sentence, before a ruling on the objection could be made, and renewed his inquiry more narrowly along the same line. His intent was apparently to set up an entrapment defense of some sort; the response invited clearly would be relevant on the question of entrapment. Finally, the defendant not only prevented the trial judge from making a complete ruling on his objection, but also failed to ask for a cautionary instruction to the jury. There is thus no basis for finding that the testimony in question produced reversible error.

Nor was there any error committed by the trial court in admitting a photograph of Flynn's trailer home. The defendant argues that the photograph depicts an "unsightly trailer" and may have "raised very negative connotations about [him] to the jury." We have reviewed the photograph and find nothing "unsightly" about the scene depicted in it. The objection to the photograph is patently meritless.

Next, the defendant insists that the question of his status as a second offender should have been submitted to the jury and that the determination of this issue at a later sentencing hearing violated the constitutional prohibition against double jeopardy. The short answer to this argument is that because all three of the defendant's offenses were committed after June 30, 1982, they were subject to sentences imposed under T.C.A. §§ 40–35–101 et seq., the so-called "judge sentencing act." The question of enhancement of sentence on the basis of recidivism was thus a matter for the trial court's determination, under the express provisions of T.C.A. § 40–35–109(f). Bifurcation of the guilt phase of the trial from the sentencing phase is a nearly universally accepted procedure which Tennessee has only belatedly

adopted; it clearly does not violate double jeopardy principles.

▆ Regarding his sentencing, the defendant further complains that the trial court should have suppressed certain allegedly irrelevant and prejudicial information in his presentence report, including the fact that he previously had been acquitted of murder (in a case in which his co-defendant was convicted and received a death sentence). He also objects to a statement in the report to the effect that he was known to the Kingsport police department as a drug pusher.

As to the former piece of information, the state correctly notes that it was not challenged below and thus is not subject to review on appeal. As to the latter point, the state maintains that it is relevant to the defendant's "social situation and background," a factor included in the sentencing criteria of T.C.A. § 40–35–207(a)(2).

▆ In contrast, the defendant characterizes the unidentified policeman's statement about his involvement with drugs as "hearsay on hearsay." At a sentencing hearing, however, the traditional rules of evidence are relaxed, and the trial judge may admit "trustworthy and probative" evidence, "regardless of its admissibility under the exclusionary rules of evidence." *State v. Mackey*, 553 S.W.2d 337, 344 (Tenn.1977). So, the fact that the statement was hearsay does not render it inadmissible for sentencing purposes. *State v. Cadle*, 634 S.W.2d 623, 627 (Tenn.Crim. App.1982). Although the anonymous nature of the statement might be seen as undercutting its trustworthiness, it is clear from the trial judge's statements that the information was given little, if any, probative value:

> Well, I may have said it was properly in there, but the thing about Mr. Flynn is that there was a lot of evidence in the record as to his currently dealing in drugs and there was evidence of prior convictions involving drugs and other offenses and it was a rather long record. So that had very little, if anything, to do with the sentencing. I'll just mention

that for the record because I think you're putting undue emphasis on something that I really paid little attention to.

We find no reversible error in connection with the presentence report.

The trial judge initially determined that Flynn was a Range I offender, and then doubled his sentences under the provisions of T.C.A. § 39–6–419:

> (a) Any person convicted of a second or subsequent violation of the provisions of subsection (a) of § 39–6–417 may be imprisoned for a term of twice the term otherwise authorized, or fined an amount of twice that otherwise authorized by the provisions of §§ 39–6–401—39–6–419 .... (b) For purposes of this section, an offense is considered a second or subsequent offense, if, prior to his conviction of the offense, the offender has at any time been convicted under §§ 39–6–401—39–6–419 ... or under any statute of the United States or of any state relating to the sale or distribution of narcotic drugs, marihuana, depressant, stimulant, or hallucinogenic drugs.

The defendant argues that his Schedule I (LSD) sentence should not have been doubled because he had never before been convicted of selling a drug in that schedule, his only prior drug convictions having involved marijuana. He insists that to double his sentence for a prior conviction involving another schedule violates due process.

In response, the state argues for a "plain meaning" reading of the statute. *See generally State v. Williams*, 623 S.W.2d 121, 124 (Tenn.Crim.App.1981). The language of § 52–1434(b), the state insists, makes it clear that this enhancement provision applies when the accused has been convicted under "*any* statute ... relating to the sale or distribution of narcotic drugs, marijuana, depressant, stimulant, or hallucinogenic drugs." (Emphasis added).

▆ Such a plain meaning construction is consistent with legislative intent. The legislative history of § 52–1434 indicates a desire to deal severely with those

who illegally sell controlled substances of whatever schedule. When the statute was enacted in 1971, it provided for an enhanced penalty of *up to* twice what otherwise was authorized. Public Acts 1971, ch. 163, § 27. The next year, the legislature amended the statute to delete the words *up to.* Public Acts 1972, ch. 597, § 12. As it now reads, the statute permits no discretion in the enhancement procedure—once applied the statute requires the automatic doubling of the imprisonment or fine. Thus, the action of the trial judge here was within the bounds of the statute, and no error can be said to have resulted.

■ Finally, the defendant insists that the fines and the sentences imposed were excessive and therefore violated the prohibition against cruel and unusual punishment. The punishment imposed in this case is within the statutory range, however, and under well-established principles of state law, it cannot be considered excessive. *See, e.g., Dukes v. State,* 578 S.W.2d 659, 666 (Tenn.Crim.App.1978); *Anglin v. State,* 553 S.W.2d 616, 620 (Tenn.Crim.App. 1977). Moreover, there is nothing about the defendant's punishment which would trigger a proportionality review of the kind described in *Solem v. Helm,* —— U.S. ——, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), and we reject the defendant's argument that his sentence should be reversed in accordance with the *Helm* decision. The severity of Flynn's punishment is the direct result, not merely of an isolated sale of $40.00 worth of LSD, but of a pattern of drug dealing evidenced by the facts in this case and by his status as a repeat offender.

The judgment of the trial court is affirmed.

DWYER and CORNELIUS, JJ., concur.