# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
April 21, 2015 Session


## STATE OF TENNESSEE v. ROY ALLEN SMITH


### Appeal from the Circuit Court for Rutherford County
### No. F-69010     Mitchell Keith Siskin, Judge

_____

### No. M2014-01172-CCA-R3-CD – Filed June 8, 2015
_____


The defendant, Roy Allen Smith, was convicted after a jury trial of simple possession of a Schedule II controlled substance, a Class A misdemeanor; possession of a Schedule III controlled substance with the intent to manufacture, deliver, or sell, a Class D felony; maintaining a dwelling used for keeping or selling controlled substances, a Class D felony; and possession of drug paraphernalia, a Class A misdemeanor.  The defendant received an effective twelve-year sentence, which was ordered to be served consecutively to the sentences of six prior convictions for which the defendant had been on probation at the time that the instant offenses were committed.  On appeal, the defendant contends that the City of LaVergne did not have jurisdiction to investigate or prosecute the offenses because the crimes occurred outside the city limits. He also challenges the sufficiency of the convicting evidence and the order to serve his sentence consecutively to his prior convictions.  After a thorough review of the record, we affirm the judgments of the trial court.


## Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed

JOHN EVERETT WILLIAMS, delivered the opinion of the Court, in which ALAN E. GLENN and ROGER A. PAGE, JJ., joined.

Joe Mason Brandon, Jr., Murfreesboro, Tennessee, for the appellant, Roy Allen Smith.

Herbert H. Slatery III, Attorney General and Reporter; Sophia S. Lee, Senior Counsel; Lawrence Ray Whitley, District Attorney General; and Jennings H. Jones, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## FACTUAL AND PROCEDURAL HISTORY

The defendant was arrested after a search warrant executed at his residence resulted in the discovery of oxycodone and several hundred dihydrocodeinone pills. A Rutherford County grand jury indicted the defendant, and he was charged with possession of a Schedule II controlled substance[1] with intent to manufacture, deliver, or sell; with possession of a Schedule III substance with intent to manufacture, deliver, or sell; with maintaining a dwelling used for keeping or selling controlled substances; and with possession of drug paraphernalia.

Edward McKenna, a detective with the LaVergne Police Department, testified that the property where the defendant resided consisted of a main residence, a shed or outbuilding, and a trailer or camper occupied by the defendant. When the SWAT team arrived, one team went to search the main house, and a separate team came to search the defendant's residence. Officers entered the defendant's camper and removed the defendant. Officers then searched his residence and found a bottle of pills. The bottle's label had been partially removed, but the remnants of the label showed a prescription for oxycodone. Detective McKenna testified that in his experience, a ripped label was used to deceive law enforcement and indicated that the pills were illegally obtained. Under the sofa, officers found a sandwich bag containing white, oblong pills which Detective McKenna testified bore the marking "IB 114."[2] Near the bathroom, police seized a red, plastic Folgers coffee can which contained coins and paper money. Officers also discovered a prescription bottle from Kroger pharmacy but did not take it into evidence because the prescription was in the defendant's name.

Kristine Keeves, a crime scene technician, photographed and collected the items recovered from the home during the search. She testified that the pills from under the couch were marked "IP 114." Ms. Keeves testified that the prescription bottle with the torn label contained fifteen blue pills and appeared to originate from LaVergne Drug Store. Ms. Keeves confirmed that other medications, including BC powder and bottles of hydrocodone and oxycodone that had been prescribed for the defendant, were not seized. However, a small, yellow pill from the kitchen was sent to the Tennessee Bureau of Investigation ("T.B.I.") for testing. The defendant's wallet, containing $833 in cash, was also seized.

---

[1] The indictment was amended without objection prior to trial to reflect that the Schedule II controlled substance was oxycodone and not roxicodone and to reflect that the Schedule III controlled substance was dihydrocodeinone and not hydrocodone.

[2] Other testimony established that the marking was "IP 114."

The bulk of the evidence was discovered approximately twenty to thirty feet from the trailer. Detective McKenna testified that police found two red plastic Folgers coffee cans hidden in the tree line by the trailer. The cans were of the same type as the one found in the defendant's home, but the one in the home was larger. One can was covered in a black plastic trash bag, and the other had duct tape on the lid. The cans were approximately one hundred to one hundred and fifty feet from the main residence. Detective McKenna testified that each can contained a ziplock "baggie" of pills and that several hundred pills were recovered. Ms. Keeves confirmed that the two containers were found approximately thirty feet from the trailer. The cans were at the base of a tree on the side facing the camper. The Folgers can covered in a black plastic trash bag contained five hundred white, oblong pills with "IP 114" imprinted on them, and these pills appeared identical to the pills recovered from the couch. The other Folgers can contained two hundred white, oblong pills with "M367" imprinted on them. Ms. Keeves collected the cans and tried to recover fingerprints from them but was unable to do so. Ms. Keeves testified that the main house was located on the other side of the tree line and across a field. She temporarily sealed the cans at the scene and then opened them at the police station to count the pills.

Detective McKenna testified that when the defendant saw the Folgers cans recovered from the tree line, he immediately said, "[T]hose are not mine." According to Detective McKenna, a prescription for personal use would allow thirty to one hundred and twenty pills per month and only a pharmacy would have over seven hundred pills.

Ella Carpenter, a special agent forensic scientist for the T.B.I., did chemical testing on some of the evidence recovered from the defendant's home. Agent Carpenter did a chemical analysis of one of the pills imprinted "IP 114" from the Folgers can containing five hundred pills, and she discovered that it was dihydrocodeinone, a Schedule III controlled substance. She did not do a separate analysis on the thirty pills recovered from the couch that also bore the "IP 114" stamp, but she concluded from a visual inspection that the pills were consistent with the dihydrocodeinone pill she had tested. Agent Carpenter also conducted a chemical analysis of the fifteen tablets in the prescription bottle with the torn label, and she found that they were oxycodone, a Schedule II controlled substance. Agent Carpenter did not do a chemical analysis on the yellow pill because she concluded from a visual examination that it was medication that was not a scheduled substance. Agent Carpenter also did not perform any chemical analysis on the two hundred pills marked "M367" in the other Folgers can. She explained that she performed a visual identification, which is a presumptive test, and that the pills were presumptively identified as dihydrocodeinone tablets based on their external markings. Detective Henry McGowan testified that the street value of each dihydrocodeinone pill would be between five and eight dollars.

-3-

The defense attempted to implicate the other two residents of the premises in the offenses. Detective McKenna testified that a man named Ronny Rich, who was the third person living on the premises, was also arrested in conjunction with the execution of the search warrant. When the defense asked Ms. Keeves about seventeen pills she collected and logged on the evidence log, she first testified that the pills may have been in a prescription bottle in the defendant's home; ultimately, she refreshed her memory with the evidence log and recollected that these pills were not seized from the defendant's home or associated with the defendant.

During trial, the defense attempted to question Detective McKenna and Ms. Keeves about the jurisdiction of the LaVergne Police Department. Detective McKenna testified that the crime occurred within Rutherford County but outside the city limits of LaVergne. The prosecution objected to the relevance of the questioning, and the trial court ruled that the testimony was not relevant to any questions for the jury, noting that the issue of jurisdiction could be taken up later. Ms. Keeves testified that, in addition to the LaVergne Police Department, "Rutherford County, I think, had an officer out there, and T.B.I." At the close of the State's proof, the trial court denied the defendant's motion for acquittal based on the contention that the LaVergne Police Department had exceeded their jurisdiction.

The jury convicted the defendant in Count 1 of the lesser-included offense of simple possession of a Schedule II controlled substance and of the other offenses in Counts 2 through 4 as charged. The defendant received a sentence of twelve years for each of the two felony convictions and eleven months and twenty-nine days for each of the two misdemeanor convictions. The sentences were ordered to be served concurrently for an aggregate sentence of twelve years. At the time of the offenses, the defendant was on probation for six prior convictions, which had an aggregate sentence of thirty-seven years. The trial court ordered the instant twelve-year sentence to be served consecutively to the defendant's prior sentences. The defendant appeals, asserting that his convictions must be reversed because the city acted outside its jurisdiction and the evidence is insufficient to support the verdicts. He also contends that the trial court erred in imposing his sentence consecutively to his prior convictions.

## ANALYSIS

### I. Jurisdiction

The defendant asserts that the LaVergne Police Department was acting outside its jurisdiction in conducting the search and bringing charges against the defendant. The State contends that this argument is waived for failure to raise it pretrial.

Motions alleging a defect in the institution of the prosecution must be raised pretrial.  Tenn. R. Crim. P. 12(b)(2)(A). So must motions alleging a defect in the indictment, presentment, or information, unless the issue raised is the subject matter jurisdiction of the court or the failure to charge an offense.  Tenn. R. Crim. P. 12(b)(2)(B); *State v. Lopez*, 440 S.W.3d 601, 610 (Tenn. Crim. App. 2014).  "Unless the court grants relief for good cause," failure to comply with the rule requiring motions to be raised pretrial results in waiver.  Tenn. R. Crim. P. 12(f), (f)(1).  In evaluating good cause, the court may consider the party's prior awareness of the issue raised in the motion and the party's opportunity to file the motion pretrial.  *See State v. Blair*, 145 S.W.3d 633, 641 (Tenn. Crim. App. 2004) (concluding that motion to suppress should have been raised pretrial when the defendant knew that only photographs of physical evidence existed); *State v. Hale*, 833 S.W.2d 65, 67 (Tenn. 1992) (holding pretrial motion was waived when the defendant had ten months to raise the issue).  Actual prejudice resulting from a defect in the indictment constitutes good cause. *See State v. Nixon*, 977 S.W.2d 119, 121 (Tenn. Crim. App. 1997); *see also State v. Shirley Larhonda Gagne*, No. E2009-02412-CCA-R3-CD, 2011 WL 2135105, at *6 (Tenn. Crim. App. May 31, 2011). Defense counsel acknowledged at oral argument that he intentionally first raised the issue of jurisdiction subsequent to the beginning of the trial. He asserts that, pursuant to Tennessee Rule of Criminal Procedure 12(b)(2)(B), it was a jurisdictional issue not required to be raised prior to trial.  Tennessee Rule of Criminal Procedure 12(b)(2)(B) states that the court may hear a claim that the indictment "fails to show jurisdiction in the court" at any time while the case is pending.  This Rule refers only to the subject matter jurisdiction of the court, which is the "court's authority to adjudicate a dispute brought before it." *Lopez*, 440 S.W.3d at 610.  Because the Rutherford County Circuit Court has subject matter jurisdiction over crimes occurring within Rutherford County, *see id.*, we agree with the State that the issue is waived for failure to raise it pretrial.  Additionally, the defendant has not demonstrated good cause to grant relief from the waiver provision.

In his brief, the defendant concedes that the issue he raises is not "whether the LaVergne Police Department validly obtained and/or executed a search warrant," but rather "whether the LaVergne Police Department had jurisdiction to bring the charges which resulted in a conviction in the present case." He asserts that his rights were violated when the city officers "executed an arrest warrant outside their jurisdictional limits."  The defendant's brief nevertheless argues that the LaVergne Police Department was acting outside its authority in conducting the search.  The police authority of incorporated towns generally extends to one mile from the city limits. T.C.A. § 6-54-301 (2010).  A search warrant is required to be directed to and served by the sheriff or another law enforcement officer with authority in the county where the warrant is issued.  Tenn. R. Crim. P. 41(c)(3)(C).  However, courts have upheld warrants as validly obtained and executed when officers who have jurisdiction in the county participate in the search, even

though the warrant was obtained by an officer without jurisdiction in the county. *State v. Smith*, 868 S.W.2d 561, 572-73 (Tenn. 1993); *State v. Pigford*, 572 S.W.2d 921, 922 (Tenn. 1978).

The evidence at trial showed that the defendant's residence was located in Rutherford County but outside the city limits of LaVergne. There was no evidence how far outside the city limits the residence was located. Ms. Keeves testified that LaVergne police conducted the search. When asked what agencies were present, she testified, "Rutherford County, I think, had an officer out there, and T.B.I." Because the proof at trial showed that T.B.I. personnel accompanied the LaVergne Police Department to search the defendant's residence and because the defendant does not challenge the jurisdiction of the T.B.I., the presence of this agency cured any jurisdictional issues. *See State v. Powell*, 53 S.W.3d 258, 261-62 (Tenn. Crim. App. 2000) (concluding that request for and execution of the warrant was valid when the requesting officer was accompanied by law enforcement whose jurisdiction to execute the warrant was not challenged).

The defendant cites no authority to support his claim that there was no jurisdiction to bring the indictment because the indictment was based on evidence provided by the LaVergne Police Department. In *State v. Flynn*, a city police department conducted a controlled buy from the defendant over one mile outside the city limits. *State v. Flynn*, 675 S.W.2d 494, 496 (Tenn. Crim. App. 1984). The defendant alleged that the evidence should be suppressed because the police acted outside their jurisdiction. *Id.* After concluding that the purchase did not exceed police authority, this court addressed the indictment by holding, "The grand jury's investigatory authority is county-wide, and hence there can be no dispute concerning the validity of the resulting presentment against Flynn for criminal activity within the county." *Id.* The court concluded that the subsequent arrest was likewise valid, and that "[t]he fact that a Kingsport city police officer is listed as the prosecuting witness on the presentment does not affect the validity of the presentment or of the defendant's arrest." *Id.* at 497.

We conclude that the defendant is not entitled to relief on this issue.

## II. Sufficiency of the Evidence

The defendant alleges that the evidence is insufficient to support his convictions. He argues that because the LaVergne Police Department acted beyond its jurisdiction in obtaining and executing the search warrant and charging the defendant, the case should not have come before the court and none of the evidence should have been admissible. This argument is better characterized as either a restatement of the defendant's jurisdictional claim or an assertion that all the evidence should have been suppressed as a result of the jurisdictional issue. The suppression issue is waived because it was not

raised pretrial, was never presented to the trial court, and is supported by no legal argument. *See also* Tenn. R. Crim. P. 12(b)(2)(C), 12(f); Tenn. R. App. P. 36(a). We further conclude that, insofar as the claim is a rehashing of the jurisdictional claim, relief is not warranted based on the analysis above.

### III. Sentencing

The defendant also challenges the trial court's order sentencing him to serve an effective twelve-year sentence consecutively to prior sentences for which he was previously on probation. The defendant acknowledges that the sentence is within the proper range, but he avers that ordering the sentence to run consecutively to his previous convictions creates an excessive sentence.

We review a trial court's decision regarding the length of a sentence for an abuse of discretion, granting a presumption of reasonableness to within-range decisions that reflect a proper application of the purposes and principles of sentencing. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). A trial court's imposition of consecutive sentences is also reviewed for abuse of discretion accompanied by a presumption of reasonableness. *State v. Pollard*, 432 S.W.3d 851, 859 (Tenn. 2013). The presumption of reasonableness applies when the trial court has provided reasons on the record establishing at least one of the seven statutory bases for imposing consecutive sentences delineated in Tennessee Code Annotated section 40-35-115(b). *Id.* at 861.

While the sentencing hearing is not a part of the record, the trial court included detailed factual findings in its sentencing order. The defendant was convicted of two Class D felonies and sentenced as a career offender, and he received the maximum sentence of twelve years under Range III. *See* T.C.A. § 40-35-108(c), -112(c)(4). He also received sentences of eleven months and twenty-nine days for his misdemeanor convictions, and all four of the sentences were ordered to be served concurrently. As a result of the defendant's convictions in this case, his probation for six prior felonies was revoked. The effective twelve-year sentence imposed in this case was ordered to run consecutively to the prior convictions.

In imposing consecutive sentences, the trial court found that the defendant had an extensive record of criminal activity, that he was sentenced for an offense committed while on probation, and that he had additional sentences not yet fully served. T.C.A. § 40-35-115(b); Tenn. R. Crim. P. 32(c)(2)(A)(i). The trial court ordered his sentences to be served consecutively to his prior sentences, noting that the defendant had been given numerous opportunities for rehabilitation. The defendant's presentence report, showing numerous offenses in addition to the six for which he was on probation, was made part of the record. The trial court considered the purposes and principles of sentencing in

imposing the sentences and found that confinement was necessary based on the defendant's criminal history, to avoid depreciating the seriousness of the offense, and because less restrictive measures had been previously applied. T.C.A. § 40-35-103(1). Because the trial court provided reasons on the record establishing more than one of the statutory factors under Tennessee Code Annotated section 40-35-115(b), we grant the decision to impose consecutive sentences a presumption of reasonableness, and we conclude that the trial court did not abuse its discretion.

## CONCLUSION

Based on the foregoing analysis, we conclude that the trial court did not err, and we affirm the judgment of the trial court.

_____
JOHN EVERETT WILLIAMS, JUDGE