IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs July 17, 2024

## STATE OF TENNESSEE v. NOAH RASHAD LYLES

**Appeal from the Circuit Court for Maury County**
**No. CR-29743      Russell Parkes, Judge**
_____

### No. M2023-01063-CCA-R3-CD
_____

The defendant, Noah Rashad Lyles, pleaded guilty to theft of property between $1,000 and $2,500, and the trial court imposed a sentence of three years' incarceration in the Tennessee Department of Correction. On appeal, the defendant argues the trial court erred in denying his request for alternative sentencing. After reviewing the record and considering the applicable law, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR., and JILL BARTEE AYERS, JJ., joined.

Raven Prean-Morris, Assistant Public Defender, Tennessee District Public Defenders Conference (on appeal) and Travis Jones, District Public Defender, and Colby Block, Assistant Public Defender (at guilty plea and sentencing hearings), for the appellant, Noah Rashad Lyles.

Jonathan Skrmetti, Attorney General and Reporter; William Lundy, Assistant Attorney General; Brent Cooper, District Attorney General; and Pamela Anderson, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### *Facts and Procedural History*

### I.      Guilty Plea

On April 4, 2023, the defendant pleaded guilty to theft of property between $1,000 and $2,500.[1]  Pursuant to the plea agreement, the defendant agreed to a three-year sentence as a Range II offender, with the manner of service to be determined by the trial court.  The facts underlying the plea, as explained by the State, were as follows:

> [O]n September 27th of 2019 and going through November the 4th of 2019 the defendant obtained an account number and routing number to a checking account belonging to his sister-in-law of his first wife.  There was a total of eight transactions that he conducted using the victim's bank account.  Some of the transactions were used to attempt to pay bills for his second wife, and some of the transactions were used to pay bills for his first wife.

> The defendant did not have the consent of the victim to use her account.  The victim is disabled with cerebral palsy, and her mother has control of the victim's bank accounts.  The total amount of all eight transactions was $1,028.  This all occurred here in Maury County.

## II.    Sentencing Hearing

During the sentencing hearing, the State introduced a copy of the defendant's presentence report.  The defendant objected to several statements contained within the report, including the statements of law enforcement officers regarding charges that were dismissed as part of the plea agreement as well as the victim impact statement of Miaya Frierson, the defendant's ex-wife.  The trial court denied the defendant's objection, finding the law enforcement statements were reliable hearsay that could be used to prove criminal history.  However, the trial court noted that it would "give it no weight unless there's proof of that history today at this hearing."  Regarding Ms. Frierson's victim impact statement, the trial court found that the statement could be considered as part of the defendant's criminal history and noted that Ms. Frierson was at the sentencing hearing and could testify as to the contents of her statement.

Miaya Frierson testified that she was previously married to the defendant and had a child with him before discovering that he was also married to other women in Tennessee.  Ms. Frierson stated that Kristen Frierson, her sister and the victim in this case, had cerebral palsy and required twenty-four-hour care.  Because the victim also had mental disabilities, Ms. Frierson's mother controlled the victim's bank account.  After discovering money was missing from her sister's account, Ms. Frierson learned that the defendant had stolen the

---

[1] The defendant was also charged with forgery and bigamy, but those counts were dismissed as part of the plea agreement.

money to pay for his other wife's bills. Ms. Frierson testified that the victim was unable to purchase a new wheelchair after the money was stolen. According to Ms. Frierson, she was unaware of the defendant's prior criminal history at the time of their marriage and was devastated because "the person who [she] thought he was is someone [she] no longer knew." On cross-examination, Ms. Frierson agreed that the defendant used some of the money he stole from the victim's account to pay bills for her household and some of it to pay bills for the defendant's other wife.

The defendant also provided a statement of allocution, apologizing for his actions and stating that he had set aside funds to reimburse the victim. The defendant testified that he currently lived in Illinois with his wife and newborn child and worked two jobs, including one for the City of Collinsville. He stated that although his criminal history was "bad," it "[did] not speak to [his] character." The defendant requested that he be placed on probation so that he could continue to work and provide for his family.

In denying probation, the trial court articulated its reasoning, as follows:

The defendant's criminal history is horrible.

As I've already articulated or attempted to articulate, this man has never lived by the laws of this society. This [c]ourt has no hopes if released on probation that he will ever live by the laws of society.

. . . .

I find that the defendant while released on parole at least three different times has had his parole revoked prior to now. After his release on his 10-year sentence, he attended International Christian College, securing a degree and 36 credits, having reported a degree in special education.

I have no idea whether to believe that or not. Frankly, I don't believe anything he says. I know why I get these pre-sentence reports now.

Mr. Lyles or whatever name you choose to go by today, you're an endearing, charming, articulate man, but you're still a thief, a liar. You are a fraud, have been, continue to be. How you secured a job with this criminal history is beyond me. You're saying that you have, quote, set aside funds to pay back the money that you stole from this disabled young lady.

However, there is zero proof that you have made a payment, none. Those words strike very much at the heart of your desire to truly make amends for the crime you have committed. I find those words are hollow.

They have no meaning to you; they have no meaning to me. I give you not one minute of stock. I put not one second of stock in whatever you say today.

As it relates to probation considerations, I've considered the pre-sentence report, your mental and physical condition and social history – which would border on being a sociopath – the facts and circumstances surrounding the offense – which I find reprehensible – and the nature of the criminal conduct which is terrible. His criminal history is more than offensive. The previous actions and/or character is, again, terrible.

I find that there is – it does not reasonably appear that he will abide by the terms of probation. I find that in the interest of society being protected from possible future criminal conduct – that there have been measures less restrictive than confinement have been applied and unsuccessful, and I find that full probation would greatly unduly depreciate the seriousness of this offense.

### *Analysis*

On appeal, the defendant contends the trial court erred in denying probation. Specifically, the defendant argues the trial court relied on irrelevant statements made by law enforcement and Ms. Frierson in the presentence report and "gave weight to an extrajudicial observation not supported by the record." The State contends the trial court acted within its discretion when it sentenced the defendant to confinement. Following our review, we agree with the State.

A trial court's decision to grant or deny probation is reviewed under an abuse of discretion standard with a presumption of reasonableness when the sentence reflects the purposes and principles of sentencing. *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012). "[A] trial court's decision to grant or deny probation will not be invalidated unless the trial court wholly departed from the relevant statutory considerations in reaching its determination." *State v. Sihapanya*, 516 S.W.3d 473, 476 (Tenn. 2014) (order) (per curiam). The burden of establishing suitability for probation rests with a defendant, who must demonstrate that probation will "'subserve the ends of justice and the best interest of both the public and the defendant.'" *State v. Souder*, 105 S.W.3d 602, 607 (Tenn. Crim. App. 2002) (quoting *State v. Dykes*, 803 S.W.2d 250, 259 (Tenn. Crim. App.

1990)); *see* Tenn. Code Ann. § 40-35-303(b); *State v. Russell*, 773 S.W.2d 913, 915 (Tenn. 1989); *State v. Carter*, 254 S.W.3d 335, 347 (Tenn. 2008).

Generally, probation is available to a defendant sentenced to ten years or less. Tenn. Code Ann. § 40-35-303(a). A defendant who is convicted as an especially mitigated or standard offender of a Class C, D, or E felony is considered a favorable candidate for probation. Tenn. Code Ann. § 40-35-102(6)(A). In determining whether incarceration is appropriate, the trial court should consider whether:

(A)    Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B)    Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C)    Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Tenn. Code Ann. § 40-35-103(1)(A)-(C). Additionally, "[t]he sentence imposed should be the least severe measure necessary to achieve the purposes for which the sentence is imposed," and "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed." *Id.* § 40-35-103(4), (5).

Following the defendant's statement of allocution, the trial court noted that it had considered the evidence presented at the sentencing hearing, the principles of sentencing, arguments as to sentencing alternatives, the nature and characteristics of the criminal conduct to which the defendant pleaded guilty, the statistical information and risk and needs assessment, and the potential for rehabilitation and treatment.

The trial court examined the defendant's extensive criminal history, which included fourteen felonies and ten misdemeanors, and found it was "horrible" and "more than offensive." The trial court also noted that the defendant had been granted parole on prior occasions and had his parole revoked "at least three different times." The trial court noted that the defendant claimed to have set asides the funds to reimburse the victim; however, the trial court found there was "zero proof that [the defendant] had made a payment" and stated it did not "put . . . one second of stock" in the defendant's allocution statement. Ultimately, the trial court found confinement would protect "the interest of society . . . from future criminal conduct," "there have been measures less restrictive than confinement . . .

applied and unsuccessful," and "full probation would greatly unduly depreciate the seriousness of this offense."

We find no abuse of discretion in the trial court's denial of probation. As the trial court noted, the defendant had an extensive history of committing similar thefts and had previously been granted parole for those offenses, which he violated on several occasions. Although the defendant testified that he had put aside the funds to reimburse the victim, the trial court noted that the defendant had not made any payments toward restitution. As evidenced by the record on appeal, the trial court thoroughly considered all the evidence prior to denying probation and ordering restitution, and the trial court stated its reasons for doing so. The defendant is not entitled to relief on this issue.

The defendant specifically takes issue with the trial court's admittance of statements from law enforcement officers and Ms. Frierson in the presentence report. During the sentencing hearing, the defendant objected, arguing the statements were irrelevant because they discussed charges that were ultimately dismissed. The trial court found that the law enforcement statements were reliable hearsay and that any statement related to dismissed charges was relevant to the defendant's criminal history. However, the trial court noted that it would "give little, if any, weight to the allegation of crime that was dismissed without specific proof from the victim or an agency." The trial court also overruled the defendant's objection regarding Ms. Frierson's victim impact statement, finding it would consider her description of dismissed charges as part of the defendant's criminal history and noting that Ms. Frierson was present at the sentencing hearing to testify regarding the contents of her statement.

We do not find that the trial court abused its discretion in admitting the statements from law enforcement officers and Ms. Frierson. It is well-settled in Tennessee that a trial court has statutory authority to admit trustworthy and probative evidence, including reliable hearsay, for sentencing purposes as long as the defendant is "accorded a fair opportunity to rebut any hearsay evidence so admitted." Tenn. Code Ann. § 40-35-209(b); *see also State v. Flynn*, 675 S.W.2d 494, 498 (Tenn. Crim. App. 1984). Furthermore, the trial court may "look behind the plea bargain and consider the true nature of the offenses committed." *State v. Hollingsworth*, 647 S.W.2d 937, 939 (Tenn. 1983) (citing *State v. Welch*, 565 S.W.2d 492 (Tenn. 1978)); *see also State v. Pierce*, 138 S.W.3d 820, 828 (Tenn. 2004). In other words, "a trial court is not restricted to considering only the crime to which the defendant pled guilty, but may consider what the evidence shows actually happened." *State v. Hargrove*, No. M2005-00300-CCA-R3-CD, 2006 WL 1896353, at *19 (Tenn. Crim. App. July 7, 2006), *no perm. app. filed*. Here, Ms. Frierson testified at the sentencing hearing, and the defendant cross-examined her regarding her victim impact statement. Additionally, the defendant was given notice of law enforcement officers' agency statements more than one month in advance of the sentencing hearing. The

defendant was free to seek a continuance in order to subpoena the officers in question or rebut their statements during the defendant's own testimony, but he declined that opportunity. Moreover, the trial court noted that it would give little, if any weight, to dismissed charges that were not supported by proof at the sentencing hearing. The defendant is not entitled to relief on this issue.

While the defendant also contends the trial court's statement that the defendant's "mental and physical condition and social history – which would border on being a sociopath" was based on speculation and not supported by the record, when viewed in the context of the trial court's complete oral findings, the brief reference was clearly in relation to the defendant's extensive criminal record, which spanned the defendant's entire adult life and included convictions for theft, assault, forgery, burglary, possession of drugs, unlawful possession of a weapon, and aggravated perjury, and the defendant's decision to steal money from his mentally and physically disabled sister-in-law in order to pay the bills of his other family. The trial court's comment indicates a concern with the defendant's likelihood to re-offend and potential for rehabilitation. As previously discussed, the trial court's denial of probation and imposition of incarceration is entitled to a presumption of correctness absent an abuse of discretion. Accordingly, the defendant is not entitled to relief on this issue.

## *Conclusion*

Based on the foregoing authorities and reasoning, we affirm the judgment of the trial court.

_____
J. ROSS DYER, JUDGE