FILED
06/12/2024
Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
January 24, 2024 Session

## STATE OF TENNESSEE v. ANTHONY JARED ROSS

**Appeal from the Circuit Court for Sevier County**
**No. 22-CR-698       Rex Henry Ogle, Judge**

_____

**No. E2023-00381-CCA-R3-CD**

_____

The Defendant, Anthony Jared Ross, pled guilty to one count of carjacking, and after a sentencing hearing, the trial court sentenced him to serve a term of nine years and to pay restitution. On appeal, the Defendant argues that the trial court erred in imposing a sentence without having or considering the results of a validated risk and needs assessment as required by Tennessee Code Annotated section 40-35-210(b). Our review reveals that the General Assembly has mandated that a sentence must be based, in part, upon the risk and needs assessment. Because this required sentencing information was never prepared, and consequently not considered by the court and the parties, we respectfully remand this case for resentencing. We also remand the case for entry of a judgment reflecting the appropriate disposition of other charges.

**Tenn. R. App. P. 3 Appeal as of Right;**
**Judgment of the Circuit Court Reversed; Case Remanded**

TOM GREENHOLTZ, J., delivered the opinion of the court, in which KYLE A. HIXSON, J., joined. ROBERT H. MONTGOMERY, JR., J., filed a separate opinion concurring in part and dissenting in part.

Brennan M. Wingerter, Assistant Public Defender - Appellate Director, Tennessee District Public Defenders Conference, Franklin, Tennessee (on appeal); Rebecca V. Lee, District Public Defender; and Shannon J. Holt, Assistant District Public Defender (at plea and sentencing), for the appellant, Anthony Jared Ross.

Jonathan Skrmetti, Attorney General and Reporter; Andrée Sophia Blumstein, Solicitor General; Katherine C. Redding, Senior Assistant Attorney General; Alicia Gilbert, Office of the Solicitor General Honors Fellow; Jimmy Dunn, District Attorney General; and Charles Murphy, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

# FACTUAL BACKGROUND

On February 4, 2022, Karena Trentham and her boyfriend were at a Pilot gas station in Sevier County, Tennessee, when her boyfriend left her in the car to enter the convenience store. During his absence, the Defendant entered the car, demanded that Ms. Trentham leave, and then drove away. He was later arrested in Monroe County while driving Ms. Trentham's car.

On August 1, 2022, a Sevier County grand jury charged the Defendant with the offenses of carjacking and theft of property. The Defendant pled guilty to carjacking on December 8, 2022, as a Range I standard offender. The plea agreement provided that the trial court would determine the length of the sentence and the manner of its service at a sentencing hearing.[1]

On February 22, 2023, the trial court held a sentencing hearing. The State did not call any witnesses at this hearing but instead submitted a presentence report and a criminal history report. The presentence report did not contain the results of a validated risk and needs assessment ("RNA").

The Defendant first called his mother, who testified that he had a history of drug addiction and that he was in Sevier County to receive treatment. The Defendant next testified, and he confirmed that he had a substance use issue. He admitted that he had voluntarily left various treatment facilities but thought he would benefit from additional opportunities for treatment. The Defendant also acknowledged that he had multiple prior convictions in both Tennessee and Mississippi, as well as previous violations of probation. He apologized to the community and admitted that he knew what he did was "wrong." He then asked the trial court to consider a sentence involving probation or split confinement.

For its part, the State asked the trial court to sentence the Defendant to ten years' imprisonment. It argued that several enhancement factors applied, including those involving a prior criminal history, multiple victims, and prior violations of release into the community. *See* Tenn. Code Ann. § 40-35-114(1), (3), (8).

After the hearing, the trial court imposed a sentence of nine years. As to the length of the sentence, the trial court stated that "the enhancement factors that have been filed by

---

[1] As we observe below, the record does not clearly show the disposition of the theft charge. Although the judgment form for this count does not show a conviction or a sentence, it indicates that the theft charge was merged into the conviction for carjacking.

the State have been shown by the record." It also considered that carjacking is a "serious problem" and poses a risk of death or serious bodily injury to people.

The trial court also concluded that full confinement was necessary, explaining that "based upon all the facts and the totality of the circumstances[, . . .] it would depreciate the seriousness of this offense and the facts of this particular case if [the court] did not execute the sentence." Finally, the court also considered the victim impact statement as part of its findings.[2]

The Defendant filed a timely notice of appeal on March 14, 2023.

## STANDARD OF APPELLATE REVIEW

"[W]hen a defendant challenges the length of a sentence that falls within the applicable statutory range and reflects the purposes and principles of sentencing, the appropriate standard of appellate review is abuse of discretion accompanied by a presumption of reasonableness." *State v. King*, 432 S.W.3d 316, 321 (Tenn. 2014) (citing *State v. Bise*, 380 S.W.3d 682, 706-07 (Tenn. 2012)). As such, this court is "bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out" in the Sentencing Act. *State v. Carter*, 254 S.W.3d 335, 346 (Tenn. 2008); Tenn. Code Ann. §§ 40-35-101 and -102 (2018). While trial courts need not comprehensively articulate their findings with regard to sentencing, "sentences should be upheld so long as the statutory purposes and principles, along with any applicable enhancement and mitigating factors, have been properly addressed [on the record]." *Bise*, 380 S.W.3d at 706. These standards also apply to a trial court's consideration of probation and other types of alternative sentencing. *See State v. Caudle*, 388 S.W.3d 273, 278 (Tenn. 2012).

## ANALYSIS

In this appeal, the Defendant requests that this court remand the case for a new sentencing hearing. He argues that the Department of Correction did not prepare a risk and needs assessment and that, consequently, the trial court did not comply with the General Assembly's requirement that the court consider the results of that assessment when fixing the sentence. Because his sentence was imposed without the trial court considering all the

---

[2] The trial court also ordered that the Defendant pay $500 in restitution to Ms. Trentham. The Defendant does not raise this issue as a ground for relief on appeal, and as such, we do not address it further. *See* Tenn. R. App. P. 13(b) ("Review generally will extend only to those issues presented for review.").

statutorily required information, the Defendant asserts that the trial court should hold a new sentencing hearing.

In response, the State does not dispute that the Department of Correction did not prepare an RNA. It also does not contest that the trial court did not consider this information. And, it does not question that Tennessee Code Annotated section 40-35-210(a) requires the trial court to consider this information in sentencing. Instead, the State argues that the Defendant waived this issue by not raising an objection at the sentencing hearing. We respectfully disagree with the State.

## A.   MANDATORY CONSIDERATION OF THE RISK AND NEEDS ASSESSMENT

In the realm of the criminal law, the General Assembly "speaks for the people on matters of public policy of the state[.]" *Van Tran v. State*, 66 S.W.3d 790, 804 (Tenn. 2001). The legislature's public policy choices are reflected in the behavior it chooses to criminalize and the punishment and consequences it attaches to that conduct. *See State v. Booker*, 656 S.W.3d 49, 68 (Tenn. 2022), *cert. denied*, 143 S. Ct. 2663 (2023). Its choices are also reflected in the purposes and principles of sentencing and in its decisions about what information sentencing courts should and must consider when meting out punishment. *See State v. Burdin*, 924 S.W.2d 82, 85 (Tenn. 1996).

Eight years ago, the General Assembly reexamined Tennessee's sentencing laws to enhance public safety. In the Public Safety Act of 2016, the legislature enhanced orders of protection and amended offense definitions. It also revised the sentencing statutes and changed how the Department of Correction supervises felony probationers and parolees. *See generally* 2016 Tenn. Pub. Acts, ch. 906 (codified in various chapters in Titles 36, 39, 40, and 41).

As part of these changes to sentencing and post-sentencing supervision, the General Assembly began requiring that the Department develop and use validated risk and needs assessments. As the legislature defined the concept, a "validated risk and needs assessment" is "a determination of a person's risk to reoffend and the needs that, when addressed, reduce the risk to reoffend through the use of an actuarial assessment tool designated by the department that assesses the dynamic and static factors that drive criminal behavior." Tenn. Code Ann. § 40-35-207(d); *see also State v. Solomon*, No. M2018-00456-CCA-R3-CD, 2018 WL 5279369, at *7 (Tenn. Crim. App. Oct. 23, 2018), *no perm. app. filed*. These assessments, then, are intended to determine and help reduce a person's risk of reoffending and must be used by the Department in setting supervision conditions, considering treatment options, and imposing graduated sanctions for violations. Tenn. Code Ann. §§ 41-1-126; 40-28-303(a).

4

However, the General Assembly did not limit the use of RNAs to post-sentencing supervision. In at least three separate provisions, the legislature required that *sentencing courts* must also consider the information contained in the assessments. For example, the General Assembly has required that sentencing courts "shall consider" the results of a validated risk and needs assessment "[t]o determine the specific sentence and appropriate combinations of sentencing alternatives that shall be imposed on the defendant." Tenn. Code Ann. § 40-35-210(b), (b)(8); *State v. Wright*, No. E2019-01599-CCA-R3-CD, 2020 WL 7091383, at *9 (Tenn. Crim. App. Dec. 4, 2020) ("In fact, before imposing sentence on a defendant, a trial court is required to consider, among other things, the result of a validated risk and needs assessment included in the presentence report."), *no perm. app. filed*. It also required that the risk and needs assessment "shall be used" by courts, among others, in "making decisions and recommendations on programming and treatment options" for felony offenders. Tenn. Code Ann. § 41-1-126(c). And lest there be any doubt as to whether the risks and needs assessment must be part of sentencing, the General Assembly specifically provided that

> A sentence *must be based on* evidence in the record of the trial, the sentencing hearing, the presentence report, *the validated risk and needs assessment*, and the record of prior felony convictions filed by the district attorney general with the court, as required by § 40-35-202(a).

*See* Tenn. Code Ann. § 40-35-210(f) (emphasis added).

To facilitate the use of the RNA in sentencing, the legislature has required that the Department shall set forth "[t]he results of the validated risk and needs assessment" as part of the presentence report. *See* Tenn. Code Ann. § 40-35-207(a)(10). Thus, for all felony cases in which there is no agreement as to the sentence, the General Assembly has required that

- the sentencing court "shall direct" the Department "to make a presentence investigation and report," Tenn. Code Ann. § 40-35-205(a);

- this presentence report "shall set forth" the "results of a validated risk and needs assessment," Tenn. Code Ann. § 40-35-207(a)(10);

- the sentencing court "shall consider" this risk and needs assessment "[t]o determine the specific sentence and the appropriate combination of sentencing alternatives that shall be imposed on the defendant," Tenn. Code Ann. § 40-35-210(b), (b)(8); and

5

- the ultimate sentence imposed by the court "must be based on evidence in" the validated risk and needs assessment, Tenn. Code Ann. § 40-35-210(f).

Importantly, the General Assembly placed the responsibility for implementing the goals of the Public Safety Act directly on the Department and the sentencing court. In no instance did the legislature allow the Department, a defendant, the State, or the sentencing court to bypass preparation and consideration of the risk and needs assessment in a felony case unless there is an agreement as to sentencing. That said, while a sentencing court must consider and base its sentence on the results of a risk and needs assessment, among other information, the legislature has not required that the court attribute particular weight to the results of that assessment in the context of an individual case. As with virtually all sentencing considerations, "the weight to be assigned to the assessment falls within the trial court's broad discretionary authority in the imposition of sentences." *Solomon*, 2018 WL 5279369, at *7. To be clear, however, the Department must prepare, and the trial court must at least consider, the results of the validated risk and needs assessment in all felony cases where the parties have not reached an agreement as to sentencing. *See State v. Pace*, No. W2022-01092-CCA-R3-CD, 2023 WL 6626457, at *1 (Tenn. Crim. App. Sept. 1, 2023), *perm. app. denied* (Tenn. Apr. 11, 2024) ("[T]he trial court erred in failing to consider the validated risk and needs assessment as required by Tennessee Code Annotated section 40-35-210(b)(8).").

In this case, the Department failed to prepare a risk and needs assessment or include any such assessment in the presentence report. Consequently, the Defendant's sentence could not have been based in any part on the trial court's consideration of the risk and needs assessment at the sentencing hearing. A different case would be presented if the Department prepared an RNA for the trial court's consideration, but the trial court, in its discretion, assigned little or no weight to it. However, this is a case in which the Department failed to prepare the RNA for the trial court's consideration in the first instance.

As such, because the law clearly requires the Department to prepare the RNA for the trial court's consideration in cases such as the Defendant's, a new sentencing should occur. Importantly, the trial court is not bound by its original sentence at the resentencing hearing. We recognize that additional information may affect its consideration of the purposes and principles of sentencing, including as to questions related to the length of the sentence and the manner of its service. *See Caudle*, 388 S.W.3d at 278.

## B.   WAIVER OF THE RISKS AND NEEDS ASSESSMENT

The parties do not dispute that the Department did not prepare an RNA for the trial court's consideration or include an RNA in the presentence report. Instead, the parties disagree on how this omission affects the trial court's sentence. The Defendant asserts that the trial court's failure to consider the results of a validated RNA violates a legislatively required sentencing component and that a new sentencing hearing is required. In response, the State argues that the Defendant waived this requirement by failing to object to the absence of the RNA at the sentencing hearing. In so arguing, the State relies upon an unreported decision of this court in *State v. Ailey*, No. E2017-02359-CCA-R3-CD, 2019 WL 3917557, at *31 (Tenn. Crim. App. Aug. 19, 2019), *no perm. app. filed*.[3] For the following reasons, we respectfully disagree with the State.

### 1.   Waiver of Mandatory Considerations By Estoppel

As we have noted, the General Assembly sought to facilitate the sentencing court's consideration of the RNA in felony cases by requiring that the assessment be conducted by the Department and included in the required presentence report. In cases where the Department has failed to prepare a presentence report, we have not held that the Defendant waives its consideration by failing to object to its absence. On the contrary, when the trial court's failure to consider a presentence report appears to result from an oversight by the parties, this court has typically remanded the case for a new sentencing hearing. *See State v. Rice*, 973 S.W.2d 639, 642 (Tenn. Crim. App. 1997) ("Evidently no presentence report was filed as the trial judge stated that he had received no report and no such report appears in the appellate record. Thus, we must remand this cause to the trial court for resentencing so that a presentence report can be prepared and the defendant can be properly sentenced."). We have also remanded cases for resentencing when the trial court has failed, by oversight, to consider other mandatory sentencing factors as well. *See State v. Van Ulzen*, No. M2004-02462-CCA-R3-CD, 2005 WL 2874654, at *4 (Tenn. Crim. App. Oct. 31, 2005) ("Therefore, if evidence of a mitigating factor or factors is presented at the trial or the sentencing hearing, the trial court is required to consider them in the sentencing process. Thus, the issue is not waived, and we will review the matter on its merits."), *no perm. app. filed*. The reasoning is simple: "The preparation of a presentence report is mandatory in a felony case in which the parties have not fully agreed to the sentence to be imposed." *State v. Allen*, No. 03C01-9409-CR-00347, 1995 WL 102741, at *2 (Tenn. Crim. App. Mar. 10, 1995); *Pace*, 2023 WL 6626457, at *2 ("Because presentence reports are a mandatory

---

[3]   In a more recent opinion, another panel of this court relied on *Ailey* to find a waiver of plenary review in this circumstance. *See State v. Pace*, No. W2022-01092-CCA-R3-CD, 2023 WL 6626457, at *2 (Tenn. Crim. App. Sept. 1, 2023), *perm. app. denied* (Tenn. Apr. 11, 2024).

component of sentencing, this Court has previously held that the failure to prepare a presentence report constitutes reversible error." (citing *Rice*, 973 S.W.2d at 642)).

There is an important exception to this general rule, although it appears only in our unreported cases. Where the Defendant *affirmatively* waives consideration of a presentence investigation report, we have held that the Defendant is estopped from claiming error on appeal. *See State v. Lowery*, No. 03C01-9604-CC-00146, 1997 WL 260070, at *4 (Tenn. Crim. App. May 19, 1997) ("No objection was made to this procedure, but the record is not merely silent as to the waiver. It evinces an affirmative waiver. Indeed, with respect to the defense, the side now claiming to be aggrieved by the absence of the report, the waiver was pressed to the point of estoppel."); *see also State v. Sutton*, No. 03C01-9708-CC-00344, 1998 WL 126250, at *3 (Tenn. Crim. App. Mar. 23, 1998) (finding a waiver of the presentence report when "[d]efense counsel made the following statement at the sentencing hearing, 'I never formally requested a presentence report. We'll waive it.'"). In this respect, we have continued to observe the legislative requirement that trial courts consider the presentence report, but we also recognized that a defendant cannot be allowed to game the system by affirmatively withholding objections until after receiving an unfavorable result. *See Lowery*, 1997 WL 260070, at *4. That said, this exception is not uniformly applied, and panels of this court have remanded for resentencing even in the face of an affirmative waiver. *See State v. Marshall*, No. W2012-01011-CCA-R3-CD, 2013 WL 257050, at *3 (Tenn. Crim. App. Jan. 23, 2013) ("No presentence report was prepared, and the parties waived having a report prepared for the trial court's judicial diversion determination. This court has concluded that sentencing a defendant in the absence of a presentence report is reversible error."), *no perm. app. filed*.

In this case, no party affirmatively waived consideration of the RNA at the sentencing hearing. Instead, it appears that the Department, the trial court, the State, and the Defendant simply overlooked its absence. Under these circumstances, and consistent with our reported cases, we must give effect to the clear statutory language requiring that the sentencing court consider, and that the sentence be based upon, the results of a validated risk and needs assessment.

## 2. Effect of a Party's Failure to Object to the Absence of Mandatory Sentencing Considerations

The State relies heavily upon an unreported case, *State v. Ailey*, to support its waiver argument and to argue that a new sentencing hearing is unnecessary. We respectfully disagree that *Ailey* is a governing precedent in this case for the following reasons.

In *Ailey*, a panel of this court held that a defendant waived a claim of error on appeal by failing to object to the absence of an RNA at the sentencing hearing. *Ailey*, 2019 WL 3917557, at *31. The panel recognized that the assessment was "one of the sources that a

8

trial court must consider in determining a defendant's sentence," but it weighed more heavily the defendant's failure to object or "to take whatever action was reasonably available to prevent or nullify the harmful effect of an error." *Id.* (citing Tenn. R. App. P. 36(a)). In so doing, it affirmed a sentence even though the sentencing court did not comply, and could not have complied, with the General Assembly's requirements for sentencing.

In this case, we respectfully decline to follow *Ailey* for two reasons. First, and as we noted above, when a felony sentencing occurs in the absence of mandatory sentencing considerations such as a presentence report, this court has remanded the case for a new sentencing hearing, except, possibly, when principles of estoppel threaten the judicial process. *See Rice*, 973 S.W.2d at 642. Although *Ailey* did not cite or distinguish *Rice*, we do not believe that this reported decision and its progeny are erroneous or unworkable. *See Frazier v. State*, 495 S.W.3d 246, 253 (Tenn. 2016) (noting that the doctrine of stare decisis does not compel a court to maintain an erroneous or "unworkable" precedent).[4] As such, we conclude that the *Rice* line of cases should govern here.

Second, the sentence imposed "must be based on" evidence contained in the RNA itself. Tenn. Code Ann. § 40-35-210(f). Thus, on par with the presentence report itself, the RNA is legislatively declared to be an essential part of every sentence. As such, the duty of ensuring that this evidence is available must be placed on the sentencing court and not just the parties. Although *Ailey* did not cite or reference subsection -210(f), we conclude that the plain language of this statutory provision should be given effect.

A careful review of *Ailey* advises against the State's argument here, where the absence of an RNA was due to oversight by the court, the State, and the Defendant. Instead, we recognize what our cases have previously identified: absent circumstances amounting to an estoppel, a sentencing hearing conducted without the legislatively required information should result in a new hearing.

---

[4] Indeed, each case cited by *Ailey* involved sentencing hearings where the legislatively required information was before the sentencing court. In one case, the victim presented proof of loss supporting an award of restitution, but the defendant objected on appeal to the form in which that evidence was presented. *See Ailey*, 2019 WL 3917557, at *31 (citing *State v. DeMass*, No. M2000-00344-CCA-R3-CD, 2000 WL 1277359, at *5 (Tenn. Crim. App. Aug. 31, 2000)). In the other two cases, the Defendant objected on appeal to additional information in the presentence report. *See id.* (citing *State v. Flynn*, 675 S.W.2d 494, 498 (Tenn. Crim. App. 1984); *State v. Brewer*, No. E2015-02178-CCA-R3-CD, 2016 WL 6087677 at *5 (Tenn. Crim. App. Oct. 18, 2016)). None of these cases involved the absence of information that the legislature has required to be considered at sentencing. Instead, the *Rice* line of cases addresses that type of situation.

### C.    ENTRY OF A CORRECTED JUDGMENT FOR COUNT 2

On our own motion, we remand Count 2 to the trial court for entry of a corrected judgment as to the charge of theft of property. According to the parties' plea agreement, the Defendant pled guilty only to the offense of carjacking as alleged in Count 1 of the indictment. The trial court accepted this plea, sentenced the Defendant for the carjacking conviction, and entered an appropriate judgment in Count 1.

As for the theft charge in Count 2, the judgment does not indicate that the Defendant was convicted of, or sentenced for, this offense. Nor does this judgment indicate that Count 2 was dismissed. Instead, it states that the unresolved theft charge has been "merged" into the carjacking conviction.

In this case, a merger of the theft charge and the carjacking conviction may be problematic for two reasons. First, our supreme court has recognized that theft is not a lesser included offense of carjacking. *See State v. Wilson*, 211 S.W.3d 714, 722 (Tenn. 2007) (holding that "robbery and theft are not lesser-included offenses of carjacking"). Second, this court has recognized that an unresolved charge should not be merged with a conviction. *See State v. Jackson*, No. 03C01-9206-CR-00222,1993 WL 285949, at *1 (Tenn. Crim. App. July 29, 1993) ("Merger has been applied to convictions, not charges, to remedy a double jeopardy problem relative to multiple punishment[s]."), *perm. app. denied* (Tenn. Nov. 1, 1993).

From the record, the disposition of the theft charge in Count 2 is unclear. As such, we respectfully remand Count 2 for entry of a separate judgment form showing the appropriate disposition of this charge, whether by dismissal or conviction. *See State v. Berry*, 503 S.W.3d 360, 364 (Tenn. 2015) ("For charges resulting in a not guilty verdict or a dismissal, the trial court should 'enter judgment accordingly' as to the respective count.").

### CONCLUSION

In this appeal, the State urges us to uphold a sentence despite all parties agreeing that the legislatively required risk and needs assessment was not prepared, was not considered in sentencing, and was not part of the basis for the sentence in this case. In the State's view, the sentence should be affirmed because the sentencing court, apparently by oversight, failed to note that information was missing and because the State and the Defendant, also apparently by oversight, failed to bring the issue to the court's attention. The result: the General Assembly's mandatory requirements and their supporting public policy considerations were defeated simply because no one noticed.

To be clear, the Defendant's crime was serious, and the trial court properly considered, among other things, the need to avoid depreciating the seriousness of this offense. However, absent circumstances amounting to an estoppel, we must give effect to mandatory components of sentencing as expressed in clear and unambiguous statutory language, even when the parties overlook them. As such, we respectfully remand the case for resentencing. We also remand Count 2 for entry of a judgment reflecting the appropriate disposition of the theft charge.

_____
TOM GREENHOLTZ, JUDGE

11